**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
Mendel Stern, Aharon Ostreicher, Yochonon
Markowitz, Abraham Kohn, Isaac Schwimmer,
Esther Schwimmer, Joel Sabel, Yoel Fried and
Fraida M. Fried, Melech Krauss,
Israel Ostreicher,

                                Plaintiffs,                         **COMPLAINT**

vs.

Highland Lake Homeowners Association,
Arthur Edwards, Inc., Archway Property
Management, Inc., Carmine Mastrogiacomo,
Christopher Perrino, Alex Rubanovich, Nancy
Diaz and Ray Torres,

                                Defendants.
-------------------------------------------------------------x

## I.  INTRODUCTION

1.  Beginning in 2016 and continuing until present, defendants have concertedly discriminated against plaintiffs in an effort to prevent them from residing within the confines of Highland Lake Estates [hereinafter "HLE"] in the Town of Woodbury, County of Orange, State of New York.

2.  Contrary to the dictates of federal and state law, defendants discriminated against plaintiffs, who are all Hasidic Jews, on account of their religion and sought to burden the outward expressions of their religious exercise, as more fully described below.

3.  As a direct consequence of defendants' discriminatory policies and practices, plaintiffs were caused myriad injuries, including, but not limited to, money damages incurred by their being forced to respond to defendants' spurious litigation and emotional damages resulting from verbal and physical harassment based upon their creed.

1

## II.  PARTIES

4.  Plaintiffs Mendel Stern, Aharon Ostreicher, Yochonon Markowitz, Abraham Kohn, Isaac Schwimmer, Esther Schwimmer, Joel Sabel, Yoel Fried, Fraida M. Fried, Melech Krauss, Israel Ostreicher and their families all are Hasidic Jews who reside, have resided or would have resided within the confines of HLE but for the discrimination set forth herein.

5.  Each plaintiff is a natural person of legal age and a citizen of the United States with the exception of Kraus, a Canadian citizen.

6.  Defendant Highland Lake Estates Homeowners Association [hereinafter "HLEHOA"] is organized pursuant to the laws of the State of New York and is the governing body for Highland Lake Estates [hereinafter "HLE"] which is located in the Town of Woodbury, County of Orange, State of New York, within this federal judicial district.

7.  At all relevant times, defendant Arthur Edwards, Inc., located at 1 DeWolf Road, Suite 101, New Tappan, NJ 07675, has served as the HLE's managing agent and, as such, has transacted business within this judicial district.  Said managing company has knowingly assisted the HLEHOA implement its discriminatory policies and practices.

8.  At all relevant times, defendant Archway Property Management, Inc., located at P.O. Box 454, Central Valley, NY 10917, has served as HLE's managing agent and, as such, has transacted business within this judicial district.  Said managing company has knowingly assisted the HLEHOA implement its discriminatory policies and practices.

9.  At all relevant times, defendants Carmine Mastrogiacomo, Christopher Perrino, Alex Rubanovich, Nancy Diaz and Ray Torres served as officers of the HLEHOA and each participated in and supported the intentionally discriminatory amendments to the HLEHOA by-laws as is further described below and other actions to block, deter or burden plaintiffs' residence

in HLE, as is further specified below.  Each of these defendants is a resident of this judicial district.

### III.  JURISDICTION

10.  As plaintiffs allege that defendants have violated both federal and state statutes intended to insure their civil rights, this Honorable Court has jurisdiction pursuant to 28 U.S.C. secs. 1331 and 1343 (3) and (4) and 1367(a) and 42 U.S.C. secs. 3604 and 3617.

### IV.  LEGAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION

11.  Since 2016, about fifteen Hasidic Jewish families have bought homes in HLE.

12.  The HOA board and many of its members have responded with extreme hostility toward their residency in HLE.

13.  HLEHOA has passed multiple amendments to its by-laws expressly designed to harass Hasidic Jewish HLE residents and Hasidic Jewish prospective HLE residents.

14.  In September 2017, the HOA amended its by-laws in a manner intended to make Hasidic people feel unwelcome in HLE.

15.  HLE's rules and regulations were amended to designate Sunday the *de jure* Sabbath for all residents, by codifying Sunday as a "Home and Family Day of Tranquility" ( Rule 15.1), by prohibiting any commercial transactions on Sunday (Rule 15.2), a day they were well aware Hasidic Jews conduct business, and by prohibiting realtors from showing homes on Sundays (Rules 14.1, 14.4, and 14.5), a day they knew Hasidic Jews visited HLE for the purpose of viewing homes for sale.

16.  To Hasidic Jews, Saturdays are the day of rest and Sunday is a day on which commercial activities are generally pursued since most Hasidic men work five days/week and are unavailable to conduct personal business on those days or on the Sabbath [Saturday].

17.  HLEHOA imposed these prohibitions to harass HLE's Hasidic residents, for whom the only free day of the week is Sunday, and to make these persons, including each plaintiff, feel unwelcome in HLE.

18.  The HLEHOA has no business declaring a specific day a "day of rest" and has done so for no reason other than to make Hasidic feel less welcome in its development.

18A.  Following enactment of this amendment to its by-laws, HLEHOA board members approached all Hasidic real estate sales agents, questioned them and then blocked them from entering/showing homes.

19.  By passing amendments to its by-laws intended to make plaintiffs unwelcome and then preventing Hasidic brokers, like plaintiff Esther Schwimmer from showing properties to Hasidic clients on Sundays, defendants intentionally burdened their residency in HLE on the basis of their creed in violation of 42 U.S.C. section 3617 and section 296 of the Executive Law of the State of New York.

### AS AND FOR A SECOND CAUSE OF ACTION

20.  Plaintiffs incorporate paras. 1-19 as if fully re-written herein.

21.  Likewise, to make Hasidic Jews feel unwelcome in HLE, defendants have adopted by laws which disallow the erection on plaintiffs' properties of eruvs and then refused to allow Jews to erect eruvs on their property, removing them and imposing hefty fines on Hasidic residents for not removing their eruvs.

22.  An eruv is a demarcated area that enables members of the Jewish faith with certain religious beliefs to carry or push objects within that area on the Sabbath and on Yom Kippur.

23.  On April 25, 2017, plaintiff Isaac Schwimmer requested permission from the HLE board, to mount two eruvs, inconspicuously placed behind two trees on his property to minimize their visibility from common areas, thereby allowing him full use of his property in a manner consistent with his religious practice and customs.

24.  Defendant HLEHOA did not provide permission to Schwimmer to erect these eruvs and removed the eruvs upon their completion.

25.  Thereafter, other plaintiffs sought to erect eruvs on their property.

26.  Plaintiff Ahraron Ostreicher mounted an Eruv on the lawn of 11 Vanderbilt, and it was spirited away several days later.

27.  Plaintiff Isaac Schwimmer mounted an Eruv in the front yard of his residence, within HLE.

28.  After being confronted with protests and being threatened with fines, plaintiff Isaac Schwimmer was faced with fines totaling more than $10,000.

29.  In this context and so threatened, plaintiff Isaac Schwimmer agreed to remove his eruv because he feared a judgment against him which would burden the re-sale of his property.

30.  The HOA by-law used to disallow construction and maintenance of an eruv has not been consistently applied by defendants to other outdoor structures or adornments.

31.  Instead, defendants have allowed numerous Christian families to erect and maintain substantial outdoor displays on their property at and around Christmas.

32.  On December 12, 2017, defendant HLEHOA initiated an action against plaintiff Isaac Schwimmer, seeking to collect a substantial fine it levied against him after he refused to remove his Eruv.

33.  On the other hand, defendants have always permitted scores of other homeowners to erect all manner of Holiday decorations on their premises, whether for Halloween or for or around Christmas, and have not fined any of these property owners for violation of HOA by-laws.

34.  The forms of expression defendants have permitted are much more visible and "disturbing" than the erection of an eruv.

35.  By disallowing the eruv, the defendants have made it impossible for plaintiffs, as Hasidic Jews, to engage in their religious practice, disallowing them from carrying objects, or pushing baby carriages, strollers or wheelchairs to synagogue on the Sabbath and Yom Kippur, the most holy day of their year.

36.  By so proceedings, the HLEHOA has violated 42 U.S.C. section 3617 of the Fair Housing Act, by selectively enforcing rules and regulations intended to burden the occupancy of plaintiffs on the basis of their creed.

37.  By so burdening plaintiffs by and through the imposition of a land use regulation, defendants have violated and continue to violate the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. section 2000cc(a)(1) [hereinafter "RLUIPA"].

38.  By selectively enforcing rules relating to the display of objects on homeowners' property on the basis of creed, defendants have violated section 296 of the Executive Law of the State of New York, a related claim over which this Honorable Court has jurisdiction pursuant to 28 U.S.C. section 1367(a).

**AS AND FOR A THIRD CAUSE OF ACTION**

39.  Plaintiffs incorporate paras. 1-38 as if fully set forth herein.

40.  In the fall 2017, plaintiff Aharon Ostreicher constructed a Sukkoth on the back porch of 11 Vanderbilt in observation of the major Jewish festival of Sukkoth.

41.  Constructing and using a Sukkoth, a small temporary structure made of corn husks and other vegetable parts, is an integral part of plaintiffs' religious practice related to observation of this holiday.

42.  Following this resident's lead, defendant HLEHOA insisted to defendant Stern, who by their records continued to own the property at 11 Vanderbilt, that the Sukkoth be dismantled.

43.  On the other hand, the HLEHOA generally and broadly allowed Christian religious adornments to remain on or around numerous residents' homes for months without any protest or demand for removal.

44.  By and through the selective implementation of rules governing what an owner may or may not place on their property, the defendants burdened the rights to fair housing of plaintiff Aharon Ostreicher on the basis of his creed and in violation of 42 U.S.C. section 3617 of the Fair Housing Act, RLUIPA and section 296 of the Executive Law of the State of New York.

**AS AND FOR A FOURTH CAUSE OF ACTION**

45.  Plaintiffs incorporate paras. 1-44 as if fully set forth herein.

46.  Plaintiff Kohn toured HLE in the summer of 2017 with the intent of purchasing a house.

47.  During his tour, the HOA's Vice President, Christopher Perrino, chased plaintiff Kohn and told him, "this is private property," and demanded that he leave HLE.

48.   Defendant Perrino and other officers of the defendant HLEHOA have not similarly harassed and chased from the HLE non-Hasidic Jews who drive around the development looking for and at homes for sale.

49.   Due to the threatening conduct of Perrino, Plaintiff Kohn was forced to leave the development and suspend his visit to HLE.

50.   Later, Kohn returned, determined not to allow bigoted persons deny him the right to buy a home of his choosing.

51.   Kohn purchased a home, learned that Perrino was a leading member of the HLEHOA and resolved not to pay HLEHOA dues because the HLEHOA was engaging in a myriad of anti-Hasidic actions.

52.   On March 30, 2018, the HLEHOA brought an action in the Town of Woodbury Justice Court against plaintiff Kohn seeking to collect $1,310.00 in HLEHOA maintenance fees which fees Kohn has refused to tender due to the policies and practices of the HLEHOA and its officers.

53.   Plaintiff Kohn hereby sues defendant HLEHOA and defendant Perrino as an aider and abettor of housing discrimination on the basis of creed in violation of section 296 of the Executive Law of the State of New York and of 42 U.S.C. section 3617 of the Fair Housing Act.

**AS AND FOR A FIFTH CAUSE OF ACTION**

54.   Plaintiffs incorporate paras. 1-53 as if fully set forth herein.

55.   Plaintiff Yochonon Markowitz is a 28-year old man who was interested in purchasing a home in HLE in 2017.

56.   Plaintiff Markowitz came to HLE and began driving through the community looking for homes.

8

57.  Defendant Perrino confronted plaintiff Markowitz and told him he was not welcome in the community and should look elsewhere for housing.

58.  Feeling threatened and unwelcome, plaintiff Markowitz desisted in his search for housing in HLE.

59.  By harassing plaintiff Markowitz with the express intention of causing him not to purchase a home in HLE on account of plaintiff Markowitz's religion, defendant Perrino violated rights guaranteed plaintiff Markowitz by 42 U.S.C. section 3604 and 3617 of the Fair Housing Act and section 296 of the Executive Law of the State of New York.

**AS AND FOR A SIXTH CAUSE OF ACTION**

60.  Plaintiffs incorporate paras. 1-61 as if fully set forth herein.

61.  In 2016, plaintiff Stern acquired ownership of 1 Vanderbilt Drive, a property within the boundaries of HLE.

62.  In February 2017, plaintiff Stern bought a second home at 11 Vanderbilt Drive.

63.  In or about May 2017, plaintiff Stern contracted with plaintiff Aharon Ostreicher for the purchase of 11 Vanderbilt Drive with the stipulation that the buyer could then take occupancy of the home.

64.  Upon occupying the premises, plaintiff Aharon Ostreicher's front door was vandalized with eggs, and, the next day, pickles and potato chips were thrown upon and around his front porch.

65.  The day after these consecutive daily acts of vandalism, plaintiff Aharon Ostreicher installed security cameras on 11 Vanderbilt and, with this, the incidents of physical intimidation directed at his home have ceased.

66.  In December 2017, believing that plaintiff Stern had leased his premises to plaintiff Aharon Ostreicher and fearful of other like "rentals, which would expedite Hasidic occupancy in HLE, defendant HLEHOA implemented a new provision of its bylaws, adopted only after Hasidic Jews began renting properties they owned to others of their faith, and imposed a fine of more than $10,000 on plaintiff Stern for [allegedly] renting this property to plaintiff Aharon Ostreicher.

67.  Similar fines were not imposed upon non-Hasidic Jews for renting their premises to non-Hasidic Jews.

68.  In a letter dated January 23, 2018, entitled "Second Warning Letter," through defendant Arthur Edwards, Inc., defendant HLEHOA fined plaintiff Stern $16,475.00 for his having rented his premises to plaintiff Aharon Ostreicher and for his refusal to pay HLEHOA dues.

69.  Plaintiff Stern has refused to pay the fine which defendants Edwards, Inc. and HLEHOA are now seeking to collect in the local Town Justice Court.

70.  Likewise, plaintiff Krauss purchased his home at 29 Vanderbilt before the by-law prohibiting the rentals of property went into effect.

71.  Nonetheless, defendants fined plaintiff Krauss for renting his home to its old owners as they sought other housing.

72.  Plaintiff Krauss and his tenants appealed to the HLEHOA to allow a few months rental until his tenants could find suitable for their handicapped mother, but this appeal fell on deaf ears.

73.  By imposing and enforcing new rules to prevent the rental of property when Hasidic Jews began renting property to other Hasidic Jews, defendants Edwards and HLEHOA violated

rights guaranteed to plaintiffs Stern and Krauss by 42 U.S.C. section 3617 and section 296 of the Executive Law of the State of New York and intentionally erected barriers to the residency of additional Hasidic Jews in HLE.

### AS AND FOR A SEVENTH CAUSE OF ACTION

74.   Plaintiffs incorporate paras. 1-73 as if fully set forth herein.

75.   Shortly after plaintiff Israel Ostreicher contracted to purchase 13 Bernard Court, defendant Perrino him, proclaiming, "I'm the law" and directing him to leave the development.

76.   During this exchange, plaintiff Israel Ostreicher stated that he had contracted to purchase a home within HLE.

77.   Perrino replied: "I know you guys are starting to come in here. You have to abide by by-laws; you need to read the by-laws."

78.   Upon moving into the community, plaintiff Israel Ostreicher's mailbox was vandalized and destroyed, a practice commonly directed against Hasidic Jews moving into HLE.

79.   Defendants are jointly responsible for the vandalism engaged in against plaintiff Israel Ostreicher as their blatant anti-Semitism encouraged and condoned such vandalism, erecting a burden on the plaintiffs on the basis of their religion in violation of both 42 U.S.C. sections 3604 and 3617 of the Fair Housing Act and section 296 of the Executive Law.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

80.   Plaintiffs incorporate paras. 1-81 as if fully set forth herein.

81.   On March 30, 2018, HLEHOA initiated legal action against plaintiff Sabel in the Town of Woodbury Justice Court seeking to collect $1,953.92 in HOA maintenance fees, a sum plaintiff Sabel has refused to pay because of the discriminatory policies and practices of the

HOA and because the HOA has used its funds to hire attorneys to selectively prosecute Hasidic residents.

82. By and through the imposition of such fines, also levied against plaintiffs Israel Ostreicher and Abraham Kohn under like circumstances as those imposed upon plaintiff Sabel, defendants intend to deter the movement of Hasidic Jews into HLE as such individuals are faced with this choice: pay to have oppression visited against members of their religious group or refuse to pay for such oppression and be subject to such fines.

83. The imposition of such fines is part of defendants' policies and practices intended to burden Hasidic Jewish occupancy within HLE and, as such, violates 42 U.S.C. section 3617 and section 296 of the Executive Law of the State of New York.

### AS AND FOR A NINTH CAUSE OF ACTION

84. Plaintiffs incorporate paras. 1-85 as if fully set forth herein.

85. Hasidic women do not drive automobiles, an expression of their religious practice and observance.

86. Hasidic children attend schools outside of the HLE for religious reasons and require transportation to school throughout the school year.

87. Hasidic families often make use of car services and delivery services for the provision of basic necessities.

88. Defendants have substantially restricted vehicles entering the HLE, disallowing school buses from picking up children near their homes, thereby burdening the religious practice of Hasidic families, including, but not limited to each plaintiff, and prohibiting delivery vehicles and car services, also knowingly imposing a disproportionate burden upon Hasidic families, again, including, but not limited to each plaintiff.

89.  By intentionally establishing restrictions on the ability of school buses and delivery vehicles to enter and drive as needed in HLE, defendants have purposely burdened the residence therein of Hasidic families in violation of section 3617 of the Fair Housing Act and section 296 of the Executive Law of the State of New York.

**AS AND FOR A TENTH CAUSE OF ACTION**

90.  Plaintiffs incorporate paras. 1-91 as if fully set forth herein.

91.  To further implement its exclusionary and discriminatory policies and practices, the HLEHOA has recently approved the construction of two security gates, restricting entry into the HLE to those who have a code to the security gates.

92.  The HLEHOA has pretextually claimed that an increase in crime is the impetus for the new security checkpoints.

93.  In fact, there has been practically no crime in the HLE and the HLEHOA intends to erect the security gates to deter entry into the community of Hasidic Jews and as a means of discouraging their interest in occupancy in the community.

94.  Defendant HLEHOA has threatened to withhold the code for these proposed entry gates to plaintiffs, that is, Hasidic Jews who refuse to pay HOA dues because of the HLEHOA's biased policies and practices.

95.  Defendant HLEHOA has also threatened to have the cars of Hasidic families, that is plaintiffs, towed should they continue to refuse to pay HOA fees and dues.

96.  By erecting bogus "security" gates which are nothing more than an effort to deter Hasidic families, including relatives and friends of the plaintiffs, from entering HLE and burden the residency of the plaintiffs on the basis of their creed, defendant HLEHOA violates 42 U.S.C. section 3617 and section 296 of the Executive Law of the State of New York.

13

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**

97.  Plaintiffs incorporate paras. 1-96 as if fully set forth herein.

98.  Defendants and HLEHOA President Mastrogiacomo and Vice President Perrino routinely and notoriously physically confront Hasidic Jews, including plaintiffs, as they enter the HLE.

99.  In so doing, defendants Mastrogiacomo and Perrino have acted in a manner intended to burden the occupancy of plaintiffs on account of their religion and in violation of 42 U.S.C. section 3617 of the Fair Housing Act and section 296 of the Executive Law of the State of New York.

**AS AND FOR A TWELFTH CAUSE OF ACTION**

100.  Plaintiffs incorporate paras. 1-99 as if fully set forth herein.

101.  Plaintiff Mrs. Schwimmer is a real estate agent who sells properties in and around the Towns of Woodbury and Monroe.

102.  To show properties on Sunday, by far the busiest day of her work week, Mrs. Schwimmer must seek and obtain prior approval from the HLEHOA.

103.  This requirement has provided advance defendant Perrino and other persons associated with the HLEHOA advance knowledge of the properties Mrs. Schwimmer intends to show.

104.  Armed with this notice, defendant Perrino and other members of the HLE HOA approached sellers within HLE and attempted to cause them to desist from doing business with plaintiff Mrs. Schwimmer by threatening them.

105.  Armed with this notice, defendants Mastrogiacomo and Perrino and other members of the HLEHOA have been present when Mrs. Schwimmer arrived at the scheduled showing

with her client, have insulted said clients, have called the police claiming that plaintiff Esther Schwimmer was engaged in criminal trespass though she was engaged in the proper discharge of her professional duties and have otherwise sought to block Mrs. Schwimmer and her clients from gaining access to homes for sale in HLE.

106.  When she has brought clients to HLE, Mrs. Schwimmer has been repeatedly greeted with verbal abuse including screamed anti-Jewish slurs from defendant Perrino and others active in the HOA.

107.  Defendant Perrino has routinely followed Mrs. Schwimmer and her clients around the community, going so far as to call the police when this real estate agent showed a property for sale to a prospective home owner.

108.  Mrs. Schwimmer has been subjected to ongoing intimidation, including a posse of HLE residents swarming her car, led by HOA officers, including Perrino.

109.  Such intimidation has caused plaintiff Schwimmer not to bring certain clients to HLE and has diminished her business opportunities based on her religion.

110.  By engaging in such conduct, defendants Mastrogiacomo and Perrino and other members of the defendant HLEHOA Board have violated sections 3604 and 3617 of the Fair Housing Act and section 296 of the Executive Law of the State of New York.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

111.  Plaintiffs incorporate paras. 1-112 as if fully set forth herein.

112.  Defendants' new by-laws prevent residents from congregating for prayer.

113.  Pursuant to these by-laws, plaintiff Stern received a written warning by mail from the HLEHOA Board not to utilize any property owned by him for prayer.

114.  Such a provision of the by-laws causes Hasidic residents substantial hardship because there is no synagogue within HLE and hey are forced to walk more than one mile, often in highly inclement weather, to pray on the Sabbath.

115.  Such a restriction bears no reasonable relationship to the purposes of the HLE/HOA, but, rather represents yet another express means of oppressing Hasidic residents.

116.  By imposing such a "no prayer" ban aimed to Hasidic residents, defendants intentionally discriminated against Hasidic residents on the basis of their religion and burdened their religious beliefs and practices in violation of section 3617 of the Fair Housing Act and section 296 of the Executive Law of the State of New York.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION

117.  Plaintiffs incorporate paras. 1-116 as if fully re-written herein.

118.  Plaintiffs Yoel and Fraida M. Fried were the first Hasidic family to move into HLE, in October 2016.

119.  On one of their first nights in the house, defendants Perrino and Mastrogiacomo stopped in front of their house at midnight and shone their headlights in the house for twenty minutes.

120.  After twenty minutes, intending to harass and intimidate plaintiffs Fried, defendants Perrino and Mastrogiacomo called plaintiff Yoel Fried on a cell phone and inquired whether he had read the HOA by-laws.

121.  During the summer of 2017, defendants Mastrogiacomo and Rabinowitz stopped plaintiff Yoel Fried and asked him what he was doing in HLE and advised him that he was on private property.

122.  To plaintiffs' observation, defendants do not so stop non-Hasidic people and query why they are in HLE.

123.  Plaintiff Fraida Fried is a real estate agent.

124.  When showing homes in HLE, plaintiff Fraida Fried has been interrupted and harassed by members of the HLE/HOA.

125.  On one occasion, when plaintiff Fraida Fried was showing 33 Vanderbilt to a Hasidic client, defendant Mastrogiacomo interrupted the showing and called the police to check on what plaintiff Fraida M. Fried was doing.

126.  On a second occasion, involving the showing of the same property to a second Hasidic client, without cause of purpose other than to harass or intimidate her and her Hasidic client on the basis of their religion defendant Mastrogiacomo exited his vehicle, and ordered plaintiff Fraida M. Fried to leave the premises, claiming that such showing was not allowed on Sunday.

127.  On a third occasion, without cause of purpose other than to harass or intimidate her and her Hasidic client on the basis of their religion, defendant Torres followed plaintiff Fraida M. Fried while she was showing a home at 8 Berkeley to a Hasidic client.

128.  On this occasion, upon exiting the showing, defendant Mastrogiacomo confronted plaintiff Fraida M. Fried's client and intentionally embarrassed plaintiff Fraida M. Fried due to her religious affiliation by asking her client what he was doing there and actively discouraging him from pursuing the home sale.

129.  In two of the three instances recited in paras. 126-129, plaintiff Fraida M. Fried's clients expressed chose not to attempt to purchase the homes they viewed and expressed upset that they were being targeted because of their religion.

130.  During the summer 2017, plaintiffs Fried wishes to rent their home; they felt harassed and did not want to continue living in HLE.

131.  Accordingly, plaintiffs Fried sought leave from the HLEHOA board to rent their premises.

132.  Defendants refused to allow them to rent their premises in May 2017.

133.  In June 2017, when the Frieds attempted to sell their home, defendant HOA called their listing agent and demanded it remove the "for sale" sign from the home.

134.  The listing agent refused, but the sign went missing several days later.

135.  In so conducting themselves as set forth in paras. 119-135, defendants intentionally burdened plaintiffs Fried's residency in HLE on the basis of their religion in violation of 42 U.S.C. sections 3604 and 3617 and section 296 of the Executive Law of the State of New York.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray that this Court accept jurisdiction over this matter, empanel a jury to hear and decide all issues within its jurisdiction, award to plaintiffs and against defendants jointly and severally 2,500,000 in compensatory damages and $5,000,000 in punitive damages as permitted by law, permanently enjoin the defendants from engaging in discriminatory practices as set forth above, award to plaintiffs the attorneys' fees and costs incurred during this litigation and enter any other provision which the interests of justice, law and equity require.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & ASSOCIATES
1 Railroad Avenue, Suite 3
Goshen, New York 10924
(845)-294-3991

Counsel for Plaintiffs

Dated  May 24, 2018