# SUSSMAN & ASSOCIATES

*- Attorneys at Law -*

| MICHAEL H. SUSSMAN | 1 Railroad Ave. - Suite 3 | LEGAL ASSISTANT |
| JONATHAN R. GOLDMAN | P.O. Box 1005 | GERI PRESCOTT |
| | Goshen, New York 10924 | |

(845) 294-3991
Fax: (845) 294-1623
sussman1@frontiernet.net

June 10, 2019

Honorable Paul E. Davison
United States Magistrate Judge
United States District Court for the SDNY
300 Quarropas Street
White Plains, NY 10601

   Re: *Stern v. Highland Lake Homeowners Ass.* 18 cv 4622 (NSR)(PED)

Dear Judge Davison,

On June 3, 2019, the day before they were scheduled to take eleven depositions between June 4 and June 14, 2019, defendants' counsel unilaterally adjourned the depositions, claiming that they lacked evidence that three of the deponents, Esther Schwimmer, Yoel Fried and Israel Ostreicher have any "ownership interest" in Highland Lake Estates. However, as explained below, adjourning eleven scheduled depositions was unjustified by an imagined failure to receive deeds from three plaintiffs.

In the first instance, Mr. Sklarin's contention is baseless. On March 5, 2019, I timely responded to defendants' document demands. Exhibit 2 to that response included [in this order] deeds or, in one instance, a contract for sale, contracts showing the possessory interest of: Mendel Stern, Aharon Ostreicher, Isaac Schwimmer [who is Esther Schwimmer's husband], Melech Krauss, Gitel Sabel [whose husband Joel is a named plaintiff], Yoel Fried [whose wife Fraida Fried is also a plaintiff], Abraham Kohn, Israel Ostreicher. I attached Exhibit 2 as provided on March 5, 2019.

In justifying his conduct, Mr. Sklarin claimed that he could not do the depositions of any of the plaintiffs though he made no claim to be missing any relevant document from eight of the eleven plaintiffs and, as noted above, the claim he did make lacked any factual basis. [In addition, of course, all of these deeds are a matter of public record and obtainable from one's personal computer through the Orange County Clerk's web site.]

If checked, please respond to one of our office located at:

☐ 11 Fowler St.   ☐ 159 Canal St.   ☐ 42 W. Main St.
Port Jervis, N.Y. 12771  Ellenville, N.Y. 12428  Liberty, NY 12754
(845) 294-3991   (845) 294-3991   (845) 294-3991

In defending their position, defendants' counsel cite to an April 8, 2019 decision [enclosed] by a Justice of the Town of Woodbury Justice Court. The following background demonstrates how inapposite defendants' use of this decision is in the current context: a number of Jewish homeowners refused to pay homeowner dues to the Association after concluding that it was engaging in a pattern of anti-Semitic acts. The Association filed suits in Justice Court seeking to collect the owed dues. However, in several cases, the underlying Complaints failed to allege that the defendants owned the parcel in question, a necessary allegation since dues are assessed against and only against the unit owner/s. The Town Justice dismissed several of the complaints because of this pleading deficiency.

Mr. Sklarin apparently believes that the Fair Housing Act bars religious discrimination only against homeowners. The defendants in this case engages in acts violative of that Act if they made unavailable housing to persons on the basis of religion or otherwise engage in religiously-based discrimination which adversely affected residents, not merely owners, within the community. Ownership is not a requirement to file a FHA claim.

Finally, I have provided Mr. Sklarin and Mr. Lynch all police reports my clients filed as well as writings they requested in which my client [Esther Schwimmer] was defamed and her real estate practice maligned.

As for proceeding with this number of depositions: as noted, we cleared a substantial block of time to do these depositions. The next comparable block of time we have available is July 15-26. I have suggested that defendants conduct two depositions/day and make the named individual defendants available thereafter. I will also depose the Police Chief [Watson] who the Association has sued for his alleged favoritism toward the Jewish residents of Highland Lake Estates.

Finally, Jonathan R. Goldman, Esq. of my firm will be appearing on this matter on June 13 as I am on the 15th day of a section 75 proceeding in Albany.

Respectfully submitted,

Michael H. Sussman, Counsel for plaintiffs

cc:  Counsel of record by ECF

# EXHIBIT 2

908 BK: 14185 PG: 478 02/22/2017 DEED R Image: 1 of 4

ORANGE COUNTY – STATE OF NEW YORK
ANN G. RABBITT, COUNTY CLERK
255 MAIN STREET
GOSHEN, NEW YORK 10924

COUNTY CLERK'S RECORDING PAGE
***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***

BOOK/PAGE: 14185 / 478
INSTRUMENT #: 20170011814

Receipt#: 2274575
Clerk: MLS
Rec Date: 02/22/2017 11:57:20 AM
Doc Grp: D
Descrip: DEED
Num Pgs: 4
Rec'd Frm: HILL N DALE ABSTRACTERS INC

Party1: DONG WILLIAM
Party2: STERN MENDEL
Town: WOODBURY (VLG)
245-1-149

Recording:

| | |
|---|---|
| Recording Fee | 40.00 |
| Cultural Ed | 14.25 |
| Records Management - Coun | 1.00 |
| Records Management - Stat | 4.75 |
| TP584 | 5.00 |
| RP5217 Residential/Agricu | 116.00 |
| RP5217 - County | 9.00 |
| Sub Total: | 190.00 |
| Transfer Tax | |
| Transfer Tax - State | 1596.00 |
| Sub Total: | 1596.00 |
| Total: | 1786.00 |

**** NOTICE: THIS IS NOT A BILL ****

***** Transfer Tax *****
Transfer Tax #: 6348
Transfer Tax
Consideration: 399000.00

| | |
|---|---|
| Transfer Tax - State | 1596.00 |
| Total: | 1596.00 |

Payment Type: Check ___
Cash
Charge ___
No Fee

Comment: ___________

Ann G. Rabbitt
Ann G. Rabbitt
Orange County Clerk

Record and Return To:

BLUSTEIN SHAPIRO RICH & BARONE LLP
10 MATTHEWS ST
GOSHEN, NY 10924

908   BK: 14185 PG: 478  02/22/2017   DEED R  Image: 2 of 4

HNS 7233

— Bargain and Sale Deed, with Covenant against Grantor's Acts — Individual or Corporation (Single Sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the 16th   day of   February   in the year 2017
BETWEEN

WILLIAM DONG AND JOENA CHAN,
RESIDING AT 11 VANDERBILT DRIVE, HIGHLAND MILLS, NEW YORK 10930

party of the first part, and

MENDEL STERN,
RESIDING AT 15 DINEV ROAD, #101, MONROE, NY 10950

party of the second part,

WITNESSETH, that the party of the first part, in consideration of TEN DOLLARS AND NO/100
$10.00
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of  Woodbury  , County of Orange, and State of New York, and are more particularly bounded and described in the attached "Schedule A" and more commonly known as 11 Vanderbilt Drive, Highland Mills, New York 10930.

BEING the same premises conveyed to William Dong and Joena Chan by deed from Dennis P. Burk dated 7/6/04 and recorded 7/16/04 in the Orange County Clerk's office in Liber 115556 at page 792.

SEE SCHEDULE A ATTACHED HERETO AND MADE PART THEREOF

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_William Dong_
William Dong

_Joena Chan_
Joena Chan

HILL-N-DALE ABSTRACTERS, INC.
20 SCOTCHTOWN AVENUE
P.O. BOX 547
GOSHEN, NEW YORK 10924
(845) 294-3110
FAX (845) 294-9581

908   BK: 14185 PG: 478   02/22/2017   DEED R   Image: 3 of 4

**Schedule A Description**

Title Number HN 57233                                                    Page   1

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Village and Town of Woodbury, County of Orange and State of New York designated as Lot 149 as shown on a map entitled "Highland Lake Estates" filed in the Orange County Clerk's Office on march 31, 1994 as Map #47-94 and being more particularly bounded and described as follows:

BEGINNING at a point in the northeasterly line of Vanderbilt Drive at the division line of Lot 148 and the herein described Lot 149 of the afore-mentioned filed map;

THENCE North 48 degrees 35 minutes 07 seconds West for a distance of 125.00 feet along said line of Vanderbilt Drive to a point;

THENCE North 41 degrees 24 minutes 53 seconds East for a distance of 160.00 feet along the division line of the herein described Lot 149 and Lot 150 of filed Map #37-97, being the southeasterly bounds of lands now or formerly of Donohue Liber 11382 page 99 to a point;

THENCE South 48 degrees 35 minutes 07 seconds East for a distance of 125.00 feet along southwesterly bounds of lands now or formerly of Highland Lake Estates, Inc., Liber 4095 page 294 and along the division line of the herein described Lot 149 and Lot 148 A as shown on a map entitled "Highland Lake Estates" filed in the Orange County Clerk's Office as Map #207-96 being the southwesterly bounds of lands now or formerly of Murphy, Liber 5488 page 288 to a point;

THENCE South 41 degrees 24 minutes 53 seconds West for a distance of 160.00 feet along the division line of the herein described Lot 149 and Lot 148 of filed Map #47-94, being the northwesterly bounds of lands now or formerly of Manco, Liber 4291 page 235 to the POINT OR PLACE OF BEGINNING.

908 BK: 14185 PG: 478 02/22/2017 DEED R Image: 4 of 4

**ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE**

State of New York, County of Orange ss:

On the 16th day of February in the year 2017 , before me,the undersigned, personally appeared William Dong ,personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

STEVEN H. CHILD
Notary Public, State of New York Notary Public
Qualified in Rockland Co.
Reg. No. 1CH6349420.
Comm. Exp. F...P

**ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE**

State of New York, County of
ss:
On the      day of      in the year
, before me, the undersigned, a Notary Public in and for said State, personally appeared
                                    , the
subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in
(If the place of residence is in a city, include the street and street number if any, thereof), that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

**ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE**

State of New York, County of Rockland ss:

On the 16th day of February in the year 2017 , before me, the undersigned, personally appeared Joena Chan ,personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.



DONNA M. PEE
Notary Public, State of New York
Registration No 01PE6349HHNotary Public
Qualified in Rockland County
Commission Expires July 29, 2025

**ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE**

State of New York, County of
On the      day of      in the year
before me, the undersigned, a Notary Public in and for said State, personally appeared
                                    , the
subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

(If the place of residence is in a city, include the street and street number if any, thereof), that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

## Bargain and Sale Deed with Covenant against Grantors Acts

Title No: HN 57233
William Dong and Joena Chan

TO

Mendel Stern

DISTRIBUTED BY
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485) FAX: 800-FAX-9256

SECTION 245
BLOCK 1
LOT 149
COUNTY OR TOWN Town of Woodbury Orange County

**RETURN BY MAIL TO:**
Blustein, Shapiro, Rich & Barone, Esqs.
10 Matthews Street
Goshen, NY 10924

Attention Diana Cuccilopoli-Puglisi, Esq.



**ORANGE COUNTY – STATE OF NEW YORK**
ANN G. RABBITT, COUNTY CLERK
255 MAIN STREET
GOSHEN, NEW YORK 10924

**COUNTY CLERK'S RECORDING PAGE**
***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***



BOOK/PAGE:  14082 / 1901
INSTRUMENT #:  20160048817

Receipt#: 2167896
Clerk:    CH
Rec Date: 07/27/2016 09:57:46 AM
Doc Grp:  D
Descrip:  DEED
Num Pgs:  5
Rec'd Frm: CTI ABSTRACT CORP

Party1:   WENDOLOWSKI JOSEPH
Party2:   STERN MENDEL
Town:     WOODBURY (VLG)
          245-1-153

| Recording: | |
|---|---|
| Recording Fee | 45.00 |
| Cultural Ed | 14.25 |
| Records Management - Coun | 1.00 |
| Records Management - Stat | 4.75 |
| TP584 | 5.00 |
| RP5217 Residential/Agricu | 116.00 |
| RP5217 - County | 9.00 |
| Sub Total: | 195.00 |
| Transfer Tax | |
| Transfer Tax - State | 1592.00 |
| Sub Total: | 1592.00 |
| Total: | 1787.00 |

**** NOTICE: THIS IS NOT A BILL ****

```
***** Transfer Tax *****
Transfer Tax #: 9641
Transfer Tax
Consideration: 398000.00
```

| Transfer Tax - State | 1592.00 |
|---|---|
| Total: | 1592.00 |

Payment Type:     Check  ✓
                  Cash  ___
                  Charge  ___
                  No Fee  ___

Comment: _____

*Ann G. Rabbitt*
Ann G. Rabbitt
Orange County Clerk

Record and Return To:

BLUSTEIN SHAPIRO RICH & BARONE LLP
10 MATTHEWS ST
GOSHEN, NY 10924

**THIS INDENTURE**, made the 15th day of July, Two Thousand Sixteen (2016),

**BETWEEN:**    **JOSEPH WENDOLOWSKI and ANGELA WENDOLOWSKI**,
residing at 1 Vanderbilt Drive
Highland Mills, NY 10930

party of the first part, and MENDEL STERN,
residing at 15 Dinev Road, # 101
Monroe, NY 10950

party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of Ten Dollars and
other valuable consideration paid by the party of the second part, does hereby grant
and release unto the party of the second part, the heirs or successors and assigns of
the party of the second part forever.

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements
thereon erected, situate, lying and being in the Town and Village of Woodbury, County
of Orange and the State of New York, being more particularly described as follows:

<u>DESCRIPTION ATTACHED</u>

Section-245
Block-1
Lot-153
County/ Town-Orange/Woodbury
Property Address:   1 Vanderbilt Drive, Highland Mills, NY 10930

**<u>BEING AND INTENDED TO BE THE SAME PREMISES CONVEYED TO THE
GRANTOR HEREIN  BY DEED FROM HIGHLAND LAKE ESTATES, INC. DATED
12/1/95 RECORDED IN THE ORANGE COUNTY CLERK'S OFFICE ON 12/8/95 IN
LIBER 4311 AT PAGE 321</u>**

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; **TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises; **TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

*Joseph Wendolowski*
JOSEPH WENDOLOWSKI

*Angela Wendolowski*
ANGELA WENDOLOWSKI

STATE OF NEW YORK       )
                        ) ss:
COUNTY OF ORANGE        )


On the 15th day of July in the year 2016, before me, the undersigned, personally
appeared JOSEPH WENDOLOWSKI and ANGELA WENDOLOWSKI, personally known to
me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument

_____
Notary Public

JOHN T. OFRIEL
Notary Public, State of New York
No. 02OF8200204
Qualified in Orange County
Commission Expires July 31, 20__

Record and Return to:

Diana Puglisi, Esq.
10 Matthews Street
Goshen, NY 10924

JOSEPH WENDOLOWSKI and
ANGELA WENDOLOWSKI


        to


MENDEL STERN

## Fidelity National Title Insurance Company
### Schedule A Description

Title Number **2161199**                    Policy Number: **8230632-96312012**                    Page    **1**

ALL that certain lot, piece or parcel of land situate in the Village of Woodbury, Town of Woodbury, County of Orange, State of New York and being known and designated as Lot No. 153 on a certain subdivision map entitled "Highland Lake Estates" and filed in the Orange County Clerk's Office on March 31, 1994 as Map No. 47-94.

V/Woodbury
SBL:  245-1-149

RECORD & RETURN TO:
Alan Fein, Esq.
2 Executive Blvd. #303
Suffern, New York  10901

### BARGAIN AND SALE DEED
### WITH COVENANT AGAINST GRANTOR'S ACTS

**THIS INDENTURE** made the 2nd day of November, two thousand seventeen

**BETWEEN MENDEL STERN**, residing at 15 Dinev Road, Monroe, New York 10950, party of the first part, and **AHARON OSTREICHER**, residing at 113 Forest Avenue, Monroe, New York 10950, party of the second part,

**WITNESSETH** that the party of the first part, in consideration of TEN AND 00/100 ($10.00) DOLLARS, lawful money of the United States, and other good and valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

SEE SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF.

**TOGETHER** with all rights, privileges and easements and **SUBJECT** to all covenants, easements, reservations and restrictions of record affecting said premises.

**BEING AND INTENDED** to be the same premises described in a deed dated February 16, 2017 from **WILLIAM DONG** and **JOENA CHAN** to **AHARON OSTREICHER** and recorded in the Orange County Clerk's Office on February 22, 2017, in Liber 14185 of Deeds at page 478.

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof,

**SUBJECT** to the Declaration of Covenants and Restrictions, dated August 9, 1995, made by **HIGHLAND LAKE ESTATES, INC.** and **COMPASS HOMES, INC.** Said Declaration was recorded in the Orange County Clerk's Office on August 15, 1995, in Liber 4256 at page 324.

**TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises,

**TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

# OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

### SCHEDULE A
### DESCRIPTION

Title Number:   **MAC5252**

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Village and Town of Woodbury, County of Orange and State of New York designated as Lot 149 as shown on a map entitled "Highland Lake Estates" filed in the Orange County Clerk's Office on March 31, 1994 as Map #47-94 and being more particularly bounded and described as follows:

BEGINNING at a point in the northeasterly line of Vanderbilt Drive at the division line of Lot 148 and the herein described Lot 149 of the afore-mentioned filed map;

THENCE North 48 degrees 35 minutes 07 seconds West for a distance of 125.00 feet along said line of Vanderbilt Drive to a point;

THENCE North 41 degrees 24 minutes 53 seconds East for a distance of 160.00 feet along the division line of the herein described Lot 149 and Lot 150 of filed Map #37-97, being the southeasterly bounds of lands now or formerly of Donohue Liber 11382 page 99 to a point;

THENCE South 48 degrees 35 minutes 07 seconds East for a distance of 125.00 feet along southwesterly bounds of lands now or formerly of Highland Lake Estates, Inc., Liber 4095 page 294 and along the division line of the herein described Lot 149 and Lot 148 A as shown on a map entitled "Highland Lake Estates" filed in the Orange County Clerk's Office as Map #207-96 being the southwesterly bounds of lands now or formerly of Murphy, Liber 5488 page 288 to a point;

THENCE South 41 degrees 24 minutes 53 seconds West for a distance of 160.00 feet along the division line of the herein described Lot 149 and Lot 148 of filed Map #47-94, being the northwesterly bounds of lands now or formerly of Manco, Liber 4291 page 235 to the point or place of BEGINNING.

FOR INFORMATION ONLY:
Premises being known as and by 11 Vanderbilt Dr, Highland Mills, New York;
Section: 245; Block: 1; Lot: 149

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.
(The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.)

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

_____
MENDEL STERN

STATE OF NEW YORK     )
                      )ss:
COUNTY OF ORANGE      )

        On the 2nd day of November, 2017, before me, the undersigned, a Notary Public in and for said State personally appeared MENDEL STERN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity and that by his/her/their signature(s) on the instrument the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

DIANA L. CACCIOPPOLI-PUGLISI
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CA5016239
QUALIFIED IN ORANGE COUNTY
COMMISSION EXPIRES AUG. 9, 20 21

**DEED**

**Record and return to:**
Charles Mandelbaum, Esq.
2230 Nostrand Avenue
Brooklyn, New York 11210

---

## BARGAIN AND SALE DEED
## WITH COVENANT AGAINST GRANTOR'S ACTS

**THIS INDENTURE,** made the 15 day of July, 2016, is from

| Section 245 Block 1 Lot 102 |
|---|

**HUGH MALLEY and MARY BETH MALLEY,** with an address of 21 Vanderbilt Drive, Highland Mills, New York 10930, party of the first part, to **ISAAC SCHWIMMER,** with an address of 956 51ST Street, Brooklyn, New York 11219, party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ONE AND NO/100 DOLLAR ($1.00), lawful money of the United States, and other good and valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Woodbury, Village of Woodbury, County of Orange and State of New York, bounded and described as follows:

### SEE SCHEDULE "A" – DESCRIPTION ATTACHED

**SUBJECT** to water rights agreements in Liber 530, cp 12, Liber 438, cp 244; utility easements in Liber 3524 cp 202, Liber 4146 cp 145, Liber 4150 cp 236, Liber 4150 cp 240, Liber 4197 cp 178, Liber 4198 cp 246; Easement in Liber 4256, cp 320; declaration in Liber 4256, cp 323; notes, easements and setbacks lines on filed map 47-94; and rights of the public in and to any portion of the property lying in the bed of a public road.

**BEING** the same lands and premises described in a deed dated December 23, 2004 from PAUL COTTRELL and SUZANNE COTTRELL to HUGH MALLEY and MARY BETH MALLEY and recorded in the Orange County Clerk's Office on December 30, 2004 in Liber 11790 at page 824.

The transfer of property herein is not subject to the continuing lien of a credit line mortgage.

**TOGETHER** with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above-described premises to the center lines thereof;

**TOGETHER** with the appurtenances and all the estate and rights of the party of the first part in and to said premises.

**EXHIBIT B**

-1-

**TO HAVE AND TO HOLD** the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvements and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

[The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.]

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

_____
Hugh Malley

_____
Mary Beth Malley


STATE OF NEW YORK      )
                                        ss.:
COUNTY OF ORANGE      )

On the 15th day of July, 2016, before me, the undersigned, personally appeared HUGH MALLEY and MARY BETH MALLEY, known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of whom the individual(s) acted, executed the instrument.

_____
Notary Public

THOMAS P. CLARKE
NOTARY PUBLIC, STATE OF NEW YORK
NO. 4936137
QUALIFIED IN ORANGE COUNTY
COMMISSION EXPIRES JUNE 13, 20 18

-2-

**CONTRACT OF SALE FOR REAL PROPERTY** dated   *Jcl-( //*   , 2016

**PARTIES**

SELLER who agrees to sell:   **CHRISTOPHER J. CARNEGLIA and WENDY R. CARNEGLIA**
**29 Vanderbilt Drive, Highland Mills, NY 10930**


PURCHASER who agrees to purchase:   **MELECH KRAUS**
**14 Dinev Road, #302, Monroe, NY 10950**


**PREMISES**

The premises being sold and purchased is described on Schedule A annexed hereto.
Tax Map # 245-1-99  (Village and Town of Woodbury)        29 Vanderbilt Drive

**PERSONAL PROPERTY**

This sale also includes the following personal property, which Seller states are paid for and owned free and clear of any liens other than the Existing Mortgage(s):  plumbing, heating, lighting and cooking fixtures, bathroom and kitchen cabinets, dishwasher, washing machine, clothes dryer, range, refrigerator, air conditioning equipment and installations, swimming pool, Culligan water system, security system and window treatments, and as set forth in MLS # 462522 )

Excluded from this sale are:  Furniture and household furnishings, and anything else not specifically included, as well as refrigerator in garage and swing set and slide.


**1.    PURCHASE PRICE**

The purchase price is                                                                        $    445,000.00

Payable as follows:

On signing of this contract by check subject to collection         $     22,500.00

Balance at closing                                                                     $    422,500.00

**2.    ACCEPTABLE FUNDS**

All money payable under this contract, unless otherwise specified, shall be either:

a)      Cash, but not over $500.00.
b)      Good certified check of Purchaser, or official check of any bank, trust company, or savings
         and loan association having a banking office in the State of New York, payable to the order
         of Seller, or to such other party as Seller may designate.
c)      Money other than the purchase price, payable to Seller at Closing, may be by check of
         Purchaser up to the amount of $500.00, or
d)      As otherwise agreed to in writing by Seller or Seller's attorney.

## 3.   ESCROW OF DOWN PAYMENT

*ten (10)*

The down payment hereunder shall be held in escrow by the Seller's attorney in an IOLA trust account at M & T Bank, 745 Route 17M, Monroe, New York 10950 until the closing of title. If the closing does not take place by reason of Purchaser's default, upon ~~five~~ days notice to the Purchaser's attorney, the Escrow Agent shall deliver the deposit to the Seller. If the closing does not take place for any reason other than the failure of the Purchaser to comply with his or her obligations hereunder, the Escrow Agent shall deliver the down payment to the Purchaser.

The Escrow Agent is acting only as a stakeholder with respect to the contract deposit. If there is any dispute as to whether the Escrow Agent is obligated to deliver the deposit or as to whom said deposit is to be delivered, the Escrow Agent shall not be required to make any delivery, but in such event the Escrow Agent may hold same until receipt by the Escrow Agent of an authorization in writing, signed by both parties, directing the disposition of the down payment, or in the absence of such authorization, the Escrow Agent shall hold the deposit until a non-appealable Judicial determination of the rights of the parties in an appropriate proceeding. However, Escrowee shall have the right, at any time, to deposit the down payment into court in the county in which the Premises are located and shall give notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder. The parties hereby agree to indemnify and hold Escrow Agent harmless of and from any and all liability with respect to the performance of Escrow Agent's duties pursuant to the provisions of this paragraph. Escrow Agent shall be entitled to represent Seller in any matter arising from this contract of sale. All notices with respect to this paragraph shall be as provided for in this agreement. Escrow Agent shall not be liable or responsible to any extent, unless due to wilful misconduct or gross negligence.

## 4.   MORTGAGE CONTINGENCY

*Seller's*

The closing of title is subject to the Purchaser obtaining a written mortgage commitment in the sum of **$323,750.00** for a period of 30 years or less with interest at the rate prevailing at the time of the closing of title, for which the Purchaser shall diligently apply and pursue. In the event such a written commitment is not obtained within 40 days of the date of ~~Purchaser's~~ execution of this agreement, either party may cancel this agreement upon written notice to the other's attorney, at which time the down payment shall be refunded, ~~thereby~~ ending all liability between the parties, ~~except that Seller's attorney may retain the sum of $450.00 representing the Seller's legal fees for preparation of this agreement and services in connection therewith~~. A mortgage commitment which is conditioned upon the Purchaser selling his present residence or any other real property, or liquidating any debt, shall be considered a non conditional commitment for the purposes of this agreement, and the Purchaser shall be obligated to close title to the premises as though said conditions were not included in the mortgage commitment. Failure to do so, or failure to keep the issued mortgage commitment in effect to the actual closing date, shall constitute a default of this agreement and the Seller shall be entitled to retain the down payment as liquidated damages, thereby ending all liability between the parties. In the event Purchaser's mortgage commitment is denied, the Purchaser shall provide the Seller's attorney with a letter of denial from the lender, which shall state the reason for the denial.

5.    **"SUBJECT TO" PROVISIONS**

The Premises are to be transferred subject to:

a)    Laws and governmental regulations that affect the use and maintenance of the Premises, provided that they are not violated by the buildings and improvements on the Premises.
b)    Grants, easements, declarations and covenants and restrictions.
c)    Any state of facts of record and as a personal inspection and accurate survey may reveal.
d)    Any state of facts on Schedule B annexed hereto.

6.    **TITLE COMPANY APPROVAL**

Seller shall give and Purchaser shall accept such title as any title company licensed in the State of New York will be willing to approve and insure in accordance with their standard form of title policy, subject only to the matters provided for in this contract.

7.    **CLOSING DEFINED - FORM OF DEED**

"Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain and Sale With Covenant Against Grantor's Acts Deed in proper statutory form for recording so as to transfer full ownership to the Premises, free of all encumbrances except as herein stated. The deed will contain a covenant by the Seller as required by Section 13 of the Lien Law.

If Seller is a corporation, it will deliver to Purchaser at the time of Closing (a) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law.  The deed in such case shall contain a recital sufficient to establish compliance with that section.

8.    **CLOSING DATE AND PLACE**

The closing of title shall take place at the office of the Seller's attorney, or the office of the lender's attorney, in Orange County only, **on or about** ~~August 12, 2016~~ *September 15 2016*.  If the closing takes place in Rockland County, the Purchaser shall pay the Seller's attorney the sum of $150.00 for travel time. In the event the closing takes place elsewhere, the Purchaser shall pay the Seller's attorney the sum of $200.00 per hour for travel time, round trip, calculated from Monroe, New York.  Seller is under no obligation to close title elsewhere.

9.    **BROKER**

Purchaser hereby represents that the Purchaser has not dealt with any broker in connection with this sale other than **Keller Williams Realty and Thomas J Real Estate**, and Seller agrees to pay the broker the commission earned thereby.

3

10.    **STREETS AND ASSIGNMENT OF UNPAID AWARDS**

This sale includes all of Seller's ownership and rights, if any, in any land lying in the bed of any street or highway, opened or proposed, in front of or adjoining the Premises to the center line thereof.   It also includes any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller will deliver at no additional cost to Purchaser, at Closing, or thereafter, on demand, any documents which Purchaser may require to collect the award and damages.

11.    **VIOLATIONS**

Seller will comply with all notices of violations of law or municipal ordinances, order or requirements noted in or issued by any governmental department having authority over the Premises at the date hereof. The Premises shall be transferred free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.   Seller shall not be obligated to correct any violations which exceed the amount of $2,500.00 and in such event may cancel this agreement and refund all monies paid hereunder, thereby ending all liability between the parties.

12.    **PURCHASER'S DEFAULT**

If Purchaser defaults hereunder, Seller may retain the down payment as liquidated damages, it being agreed that Seller's damages in such event might be impossible to ascertain and that the down payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

13.    **INSTALLMENT ASSESSMENT**

If at the time of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and any installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and are to be adjusted as a tax adjustment based on the fiscal period for which assessed.

14.    **APPORTIONMENTS**

The following are to be apportioned as of midnight of the day before the day of Closing:

> Taxes, water, fuel, sewer and common charges, if applicable, on the basis of the fiscal period for which assessed.

If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation. Any errors or omissions in computing apportionments at Closing shall be corrected.   This provision shall survive Closing.

15.    **WATER METER READING**

If there be a water meter on the Premises, Seller shall furnish a reading to a date not more than thirty (30) days before Closing date and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

**16.   ALLOWANCE FOR UNPAID TAXES, ETC.**

Seller has the option to credit Purchaser as an adjustment of the purchase price with the amount of any unpaid taxes, common charges, assessments, water and sewer charges, together with any interest and penalties thereon to a date not less than five (5) business days after Closing, provided that official bills therefore computed to said date are produced at Closing.

**17.   PAYMENT OF ENCUMBRANCES**

If there is anything else affecting the sale which Seller is obligated to pay and discharge at Closing, Seller may use any portion of the balance of the purchase price to discharge it.  As an alternative Seller may deposit money with the title insurance company employed by Purchaser and required by it to assure its discharge, but only if the title insurance company will insure Purchaser's title clear of the matter or insure against its enforcement out of the Premises.  Upon request, made within a reasonable time before Closing, the Purchaser agrees to provide separate certified checks as requested to assist in clearing up these matters.

**18.   AFFIDAVITS OF SELLER**

If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver a satisfactory detailed affidavit at Closing showing that they are not against Seller.

**19.   TRANSFER TAX**

At Closing, Seller may credit the Purchaser or may deliver a check payable to the order of the County Clerk in the amount of any applicable transfer tax payable by reason of the delivery or recording of the deed.

**20.   SELLER'S INABILITY TO CONVEY**

In the event the Seller is unable to transfer title to the Purchaser in accordance with this contract, Seller's sole liability shall be to refund all money paid on account of this contract plus charges incurred by the purchaser for examination of title and any survey and/or survey inspection charges which in no event shall exceed the total sum of $550.00.  Upon such refund and payment, this contract shall be considered null and void and neither party shall have any obligation to the other. The Seller in no event shall be obligated to take any steps to convey title as required herein, and if Purchaser elects to take such title as can be conveyed, there shall be no abatement of price.

**21.   CONDITION OF PROPERTY**

Purchaser has inspected the buildings on the Premises and the personal property included in this sale and is thoroughly acquainted with their condition.  Purchaser agrees to purchase them "as is" and in their present condition subject to reasonable use, wear, tear, and natural deterioration between now and Closing.  Purchaser shall have the right, after reasonable notice to Seller, to inspect the Premises within 48 hours of the scheduled closing.

## 22.   ENTIRE AGREEMENT

All prior understandings and agreements between Seller and Purchaser are merged in this contract. It completely expresses their full agreement.  It has been entered into after full investigation, neither party relying upon any statements made by anyone else that is not set forth in this contract.

## 23.   CHANGES MUST BE IN WRITING

This contract may not be changed or canceled except in writing.  The contract shall also apply to and bind the distributees, heirs, executors, administrators, successors and assigns of the respective parties.  Each of the parties hereby authorize their attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

## 24.   NOTICE

All notices required by this agreement must be in writing and served on the parties at their respective address set forth herein, by regular mail, certified mail, overnight mail, overnight courier, or by personal service with a copy provided to the party's attorney by regular mail.  Notice shall be deemed received the 4th day after mailing, and on the date of delivery if by overnight mail, overnight courier or personal delivery to either party, whether or not accepted by such party. Notice of change of address of either party or their attorney shall be provided to the other party's attorney.  Routine communication and notice of change of address may be between attorneys by fax.

Attorney for Seller:       Morton Marshak
                           1 Stage Road
                           Monroe, NY 10950

Attorney for Purchaser:    ~~Michael Blustein~~  DIANA PUGLISI
                           Blustein, Shapiro, Rich & Barone
                           10 Matthews Street
                           Goshen, NY 10924

## 25.   MISCELLANEOUS

a)   Any singular word or term herein shall also be read as in the plural whenever the sense of this contract may require it.

b)   None of the Seller's representations, warranties, or obligations set forth in this agreement or any Rider shall survive delivery of the Deed and are to be construed as being "to the best of Seller's knowledge"

c)   This contract shall not be assigned by the Purchaser without the prior written consent of the Seller.

d)   In the event this contract contains a seller's concession or credit for closing costs, the parties acknowledge that the purchase price has been increased (grossed up) to include said amount.

e)   The transmittal of this document shall not be construed as an offer to sell until executed by all parties, and the Seller's failure to execute it shall not be grounds for any cause of action by the Purchaser against the Seller, either at law or in equity, and Purchaser specifically waives such rights.

f)   The Purchaser acknowledges receipt of a Lead Paint Disclosure form and EPA booklet with this contract.

6

g)    In lieu of providing a Property Condition Disclosure Statement, the Seller shall credit the Purchaser with the sum of $500.00 at the closing of title.

h)    The Seller shall not be obligated to make any repairs or corrections to the premises which may be required by Purchaser's lender, and in such event may cancel this agreement, unless Seller chooses to make said repairs or corrections or allows the Purchaser to do so at Purchaser's own cost and expense.  In the event neither party does so, the Seller shall return the Purchaser's down payment, thereby ending Seller's liability under this agreement.

i)    The venue for any action or proceeding shall be in Orange County, New York, and the laws of the State of New York shall be applicable.


_____                    _____
Christopher J. Carneglia, Seller                     Melech Kraus, Purchaser

_____
Wendy R. Carneglia, Seller

7

# PURCHASER'S RIDER TO CONTRACT OF SALE

NOTWITHSTANDING ANY PROVISION TO THE CONTRARY, IF ANY OF THE TERMS OF THE CONTRACT CONFLICT IN ANY WAY WITH THE TERMS OF THIS RIDER, THE TERMS OF THIS RIDER SHALL PREVAIL.

1. It shall be a condition of Purchaser's obligation to close that the following be true at closing:
   a. There are no Village or Town Code Violations;
   b. All of the improvements on the Premises and all portions thereof are located within the record lines of the Premises and do not violate any setback requirements. All improvements at the premises (i.e. decks, sheds, porches, etc.) were either (i) part of the original construction and included as part of the original Certificate of Occupancy, or (ii) Seller obtained Certificates of Occupancy/Compliance for any such improvements at the time such improvements were completed;
   c. The premises has not been used by Seller for the storage or disposal of toxic or hazardous materials, and to the best of Seller's knowledge, the premises have never been used for the storage of toxic or hazardous materials.
   d. Sellers are not aware of the existence of any underground storage tanks located on the premises, are not aware of any spillage, leakage, release or disposal of any hazardous substances in, on or about the Premises and has not received any written notice of any violation of any federal, state or local law or ordinance relating to pollution or protection of the environment affecting the Premises.
   e. Sellers have no knowledge of any rollback taxes or tax penalties that affect the Premises. Sellers shall indemnify and hold Purchaser harmless from any such taxes, this provision surviving delivery of the deed;
   f. To the best of Sellers' knowledge, there is no basis for any claim by any person to adverse possession of any portion of the Premises and Sellers have not granted any easements or license rights to any other party, other except as is recorded of record. This provision shall survive delivery of the deed.
   g. All of the above are "to the best of sellers knowledge" not to survive delivery of the deed.

2. The premises are sold in an "as is" physical condition, except that the Seller makes the following representations, which shall not survive delivery of the deed hereunder:
   (a) The plumbing, heating and electrical systems are and at the time of the closing of title will be in working order.
   (b) The roof is and at the time of the closing of title will be free of leaks.
   (c) The basement (if any) is, and at the time of the closing of title will be, free of seepage and leakage or standing water.
   (d) All appliances included in this sale are and at the time of the closing of title will be in working order.
   (e) The premises are connected to a municipal or community sewage treatment facility
   (f) The premises are supplied with water from a municipal or community water system as of right
   (g)

3. The Purchaser may inspect the premises within 48 hours of the closing with all utilities and systems working. The Seller will deliver premises vacant and broom clean upon the closing of title, free of leases or tenancies, together with keys to the premises, both internal and external.

4. In the event of the death or serious illness or disability of the Purchaser (or either of them) prior to
*
* as defined in the ADA

closing of title, the surviving Purchaser or its legal representative, shall have the option of proceeding with this contract or declaring it null and void and securing a refund of all earnest monies deposited hereunder. In addition, if Purchaser (or either of them) shall lose its current employment or if the mortgage lender has issued a commitment and the mortgage lender thereafter fails or refuses to lend mortgage proceeds pursuant to its commitment, then the Purchaser, at its option, shall have a right to terminate this Contract.

5. The Seller shall deliver to the Purchaser at closing of title a Certificate of Occupancy issued by the building department of the municipality in which the premises are located for year round occupancy of same as a single family dwelling, together with any building permits and/or Certificates of Occupancy for any improvements (including but not limited to the deck, additions, stove insert in fireplaces) at the subject premises. In the event such Certificate(s) of Occupancy is/are not available, the Seller shall produce a letter from the building inspector stating that the said Certificate(s) of Occupancy is/are not required. All improvements to the subject premises, including the main structure, driveway, well, and septic system will be located within the bounds of the property. Seller agrees to remove any encroachments exceeding 12 inches, either from Sellers property or adjoining neighbors that a survey may disclose, _if reasonably able to do so unless the purchaser's title company will insure to the boundary lines_ *At their discretion*

6. Notwithstanding the liability for risk of loss or damage of the premises due to fire, the Seller agrees that should the premises be damaged in any way by fire, elements or vandalism, the Purchaser shall have the option of proceeding with this contract or declaring the same null and void and in such an event, the sole liability of the Seller will be to return the entire binder and down-payment paid hereunder. _unless Seller shall correct such damage._

7. If the main agreement contains provisions pursuant to which title is to be conveyed "subject to"...is deemed to have the following language added thereto: "...provided the same are not violated by existing structures and uses, provided that same do not prevent the erection and maintenance of a one-family dwelling and customary accessory uses, and further provided that the same do not render title unmarketable."

8. If the main agreement contains any provision pursuant to which title is to be conveyed subject to utility easements, or rights of way of any kind, whether by specific reference to recorded instruments or by general reference to such easements as may be of record, the same shall be construed to mean those easements or rights of way which might either be observed by inspection of the premises or provided the same are limited to within fifteen (15) feet of the street line or in the street with no greater privilege than keeping lines clear a distance of no more than fifteen (15) feet.

9. At Closing, Seller shall deliver a certified or attorney escrow check payable to the order of the appropriate state, city or county officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed, together with any required tax return * Purchaser agrees to duly complete the tax return and to cause the check(s) and the tax return to be delivered to the appropriate officer promptly after Closing. _* or seller may credit purchaser with the amount required._

10. Seller represents that the premises front on a municipal road or have a recorded right of way and that there is a recorded Maintenance Agreement that specifies the maintenance of the road and cost for each homeowner, and that the Sellers are not in default of said Agreement and agrees to provide letter from Association showing dues are paid to date.

11. Seller shall maintain the grounds, lawn, garden (if any), including grass cutting and/or snow removal as, if and when necessary, at the subject premises, in keeping with the general standards of the

2

neighborhood, until the closing.

12. Seller shall have installed an operable single station smoke detector alarm device and carbon monoxide detector device prior to closing. *This clause shall survive closing and delivery of the Deed for a period of ten (10) days.*

13. In the event Purchaser's title report shall disclose objections or exceptions to title, then in that event sellers may elect to adjourn the closing of title for a reasonable period of time from the date of execution of this contract in which to clear said objections or exceptions to title. Sellers will not be required to commence a lawsuit in order to remove an objection to title.* to be mutually agreed upon

14. Seller represents that the no part of the premises is located in a designated flood plain or wetlands. In the event it is determined that any part of the premises is in fact in a designated flood plain or wetlands, Purchaser, at its option, may elect to consummate the transaction or may terminate the contract upon notice to the sellers, at which time this contract shall be deemed null and void and the entire down payment shall be returned to Purchaser and Purchaser shall be reimbursed for actual cost for title search and survey.

15. In the event the subject premises appraises for less than the Purchase Price, Purchaser may cancel the Contract of Sale, and Seller shall promptly refund Purchaser's entire down payment.

16. This Contract is subject to and contingent upon the actual closing of the purchase money mortgage to the Purchaser and the disbursement of such loan proceeds at the closing. In the event that the mortgage commitment contains conditions, which cannot be satisfied by the Purchaser after good faith effort, the Purchaser shall not be considered to have obtained a mortgage commitment, and the mortgage commitment shall be deemed never to have been issued. Similarly, if the Purchaser has obtained a mortgage commitment and later it is rescinded through no fault of the Purchaser, then such mortgage commitment shall be deemed never to have been issued.

17. If Purchaser willfully defaults hereunder, Seller's sole remedy shall be to receive and retain the down payment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the down payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty. If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance. wilfully

18. Receipt of a copy of the Title Commitment by Seller's attorney shall be deemed notice of any exceptions, conditions or violations in title.
19. Any representations made by Seller shall be construed to mean "to the best of Seller's knowledge" not to survive delivery of the deed.

Seller _____

Seller _____

Seller _____

Purchaser _____

Purchaser _____

3

## DISCLOSURE TO BUYER

### Information on Lead-Based Paint and/or Lead-Based Paint Hazards

*1. Lead Warning Statement.*   Every Buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and must notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

*2. Seller's Disclosure.*   The Seller does not have knowledge of lead-based paint and/or lead-based paint hazards in the housing. The Seller does not have any reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

*3. Buyer's Acknowledgment.*   The Buyer has received the pamphlet, *Protect Your Family From Lead in Your Home.*   The Buyer has received a 10-day opportunity from the date Buyer signs this Contract of Sale to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards. If such an inspection reveals the presence of same, the Buyer may cancel this agreement, and upon return of the down payment, the Seller's liability hereunder shall be terminated without penalty.

*4.*   Agent has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

*5. Certification of Accuracy.*   The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate, and acknowledge that this shall not survive the closing of title.

Christopher J. Carneglia, Seller

Melech Kraus, Buyer

Wendy R. Carneglia, Seller

8

ALL that certain plot, piece or parcel of land lying and being in the TOWN OF WOODBURY, COUNTY OF ORANGE, State of New York, being known and designated at Lot #99 on a certain map entitled "Highland Lake Estates" and filed in the Orange County Clerk's Office on 3/31/94 as Map No. 47-94, being further described as:

BEGINNING at a point on the southerly line of Vanderbilt Drive and running in an easterly direction along Vanderbilt Drive S 48 degrees 35' 07" E 125 feet to a point, thence leaving said Vanderbilt Drive and running in a southerly direction, S 41 degrees 24' 53" W 160 feet to a point, thence running in an westerly direction, N 48 degrees 35' 07" W 125 feet to a point, thence running in a northerly direction, N 41 degrees 24' 53" E 160 feet to the point or place of BEGINNING.

```
RECORDED/FILED
04/14/2005/  10:30:07
DONNA L. BENSON
County Clerk
ORANGE COUNTY, NY

FILE # 20050041178
DEED R / BK 11810 PG 1252
RECORDING FEES 117.00
TTX# 009821 T TAX 1,900.00
Receipt#406712 dab
```



SCHEDULE A
==========

 

Owner's Policy of Title Insurance

**Fidelity National Title Insurance Company**
**of New York**
A Stock Company

CC 18960

POLICY
NUMBER **5312-** 1238880

## OWNER'S POLICY OF TITLE INSURANCE

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, a New York corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested other than as stated therein;*
2. *Any defect in or lien or encumbrance on the title;*
3. *Unmarketability of the title;*
4. *Lack of a right of access to and from the land.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.*

CRYSTAL CLEAR ABSTRACT CORP.
321 Main Street Rear, 2nd Floor
Poughkeepsie, NY 12601

FIDELITY NATIONAL TITLE INSURANCE COMPANY
OF NEW YORK

Countersigned

Authorized Signature
(PLEASE PRINT NAME)

SEAL

By: _____
President

Attest: Charles H. Wimer
Secretary

FORM 5312 (5/1/93)
Reprinted (1/96)

ALTA OWNER'S POLICY - 1992 (10-17-92)

SCHEDULE B

## FIDELITY NATIONAL TITLE
## INSURANCE COMPANY

### SCHEDULE A

File No. CC 18960
POLICY NO: 5312-1238880

Date of Policy: MARCH 29, 2005

Amount of Insurance $ 475,000.00

1. Name of Insured: CHRISTOPHER J. CARNEGLIA  AND WENDY R. CARNEGLIA

2. The estate or interest in the land which is conveyed by this policy is:

   A FEE SIMPLE

3. Title to the estate or interest in the land is vested in:
   CHRISTOPHER J. CARNEGLIA AND WENDY R. CARNEGLIA, BY DEED FROM JAMES E. HARTIGAN JR. AND NANCY A. HARTIGAN, DATED 3/29/05, RECORDED  4/14/05 IN LIBER 11810 PG1252

4. The land referred to in this policy is described as follows:
   SEE ATTACHED

Countersigned:

By
Authorized Signatory

## CRYSTAL CLEAR ABSTRACT CORP.

FORM U312 A (1193)                    ALTA OWNER POLICY 1992 (REV. 10-17-93) SCHEDULE A

## SCHEDULE "A" – DESCRIPTION

Title No.  CC 18960

ALL that certain plot, piece or parcel of land lying and being in the TOWN OF WOODBURY, COUNTY OF ORANGE, State of New York, being known and designated at Lot #99 on a certain map entitled "Highland Lake Estates" and filed in the Orange County Clerk's Office on 3/31/94 as Map No. 47-94, being further described as:

BEGINNING at a point on the southerly line of Vanderbilt Drive and running in an easterly direction along Vanderbilt Drive S 48 degrees 35' 07" E 125 feet to a point, thence leaving said Vanderbilt Drive and running in a southerly direction, S 41 degrees 24' 53" W 160 feet to a point, thence running in an westerly direction, N 48 degrees 35' 07" W 125 feet to a point, thence running in a northerly direction, N 41 degrees 24' 53" E 160 feet to the point or place of BEGINNING.

# Fidelity National Title
### INSURANCE COMPANY OF NEW YORK

**POLICY NO. 5312-1238880**

## SCHEDULE B

### PART I

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  The lien of all taxes for the year 2005 ,and there after.
2.  Underground encroachments and easements, if any, including pipes and drains and such rights as may exist for entry upon said premises to maintain and repair the same. Policy will insure that the same will not interfere with the use of the premises for residential purposes.
3.  No Title is insured to any land lying within the lines of any street, road, avenue, lane, turnpike or highway in front of or adjoining the premises described in Schedule "A" or which may cross over the same.
4.  Company shall only be responsible for payment of water and/or sewer bills presented at closing.  If funds collected at closing are insufficient to pay balance due in full, the party responsible (purchaser, seller or borrower, as determined at closing) for payment shall be required to provide additional funds to this company.  Company excepts any remaining water and/or sewer charges not presented for payment at closing.  Company shall not be responsible for payment of any outstanding balances resulting from failure to present a bill for payment at closing or due to a municipality's failure to provide accurate billing information.
5.  Any lien, or right of a lien, for services, labor, materials heretofore or hereafter furnished, imposed by law and not shown by the public records.
6.  Any encroachments, easements, measurements, variations in area or content, party walls or other facts which a correct survey of the premises would show.
7.  Rights or claims of parties in possession.
8.  Roads, ways, streams or easements, if any, not shown of record, riparian rights and the title to any filled-in-land.
9.  Company excepts any covenants and restrictions in the deed of conveyance
10. Mortgage to American Home Mortgage, dated 3/29/05 in the amount of $ 380,000.00, recorded 4/14/05 in Liber 11810 pg 1256.
11. Utility Easement and Right of Way in Liber 389 pg523, Liber 536 pg 52, Liber 539 pg47,Liber 541 pg 401, Liber 699 pg 64, Liber 703 pg 107,Lier 1098 pg 160,Liber 1183 pg 480, Liber 2833 pg289,Lier 3524 pg202, Liber 4150 pg 236,Liber 4150 pg 240,ILiber 4146 pg 145, Liber 4197 pg 178,Liber 4198 pg 246.
12. Notes and Easements on Map 47-94 including 20' wide drainage easement.
13. Subject to Declaration of Restrictions in Liber 4256 pg323.
14. Subject to Easement in Liber 4256 pg 320.
15. As premises herein are benefited by a tax exemption, policy will except the lien which may attach by reason of any restoration of real property taxes after transfer of title by the owner entitled to tax exemption.

**Survey made by Vincent Pietrzak, PLS dated 4/10/97, shows house dwelling, stone drive extends to Vanderbuilt Drive, no other encroachments or variations to lines of title. Personal inspection on 3/8/05 shows shed and above ground pool not located.**

## TIRSA ENDORSEMENT

Attached to and made a part of Policy Number _____ 5312 1238880



Issued By

### FIDELITY NATIONAL TITLE INSURANCE COMPANY

(Owner's Policy)

1.  The following is added to the insuring provisions on the face page of this policy:

    "5.  Any statutory lien for services, labor or materials furnished prior to the date hereof, and which has now gained or which may hereafter gain priority over the estate or interest of the insured as shown in Schedule A of this policy."

2.  The following is added to Paragraph 7 of the Conditions and Stipulations of this policy:

    "(d) If the recording date of the instruments creating the insured interest is later than the policy date, such policy shall also cover intervening liens or incumbrances, except real estate taxes, assessments, water charges and sewer rents."

THIS ENDORSEMENT is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsement thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorse-ments, nor does it extend the effective date of the Policy, nor does it increase the face amount thereof.

IN WITNESS WHEREOF Fidelity National Title Insurance Company has caused this Endorsement to be signed on its date of issue.

*Fidelity National Title Insurance Company*

BY

President

ATTEST

Secretary

Standard New York Endorsement (9/1/92)
For Use With ALTA Owner's Policy (10/17/92)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

    (a) created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy; or

    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4. Any claim which arises out of the transaction vesting in the Insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that is based on:

    (i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or

    (ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:

        (a) to timely record the instrument of transfer; or

        (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

**1. DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A, and, subject to any rights or defenses the Company would have had against the named insured, those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE AFTER CONVEYANCE OF TITLE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its own choice (subject to the right of the insured to object for

reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5. PROOF OF LOSS OR DAMAGE**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

**(a) To Pay or Tender Payment of the Amount of Insurance.**

To pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations to the insured under this policy, other than to make the payment required, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

**(b) To Pay or Otherwise Settle With Parties Other than the Insured Or With the Insured Claimant.**

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION, EXTENT OF LIABILITY AND COINSURANCE

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A; or,

(ii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the Amount of Insurance stated in Schedule A at the Date of Policy is less than 80 percent of the value of the insured estate or interest or the full consideration paid for the estate or interest, whichever is less, or if subsequent to the Date of Policy an improvement is erected on the land which increases the value of the insured estate or interest by at least 20 percent over the Amount of Insurance stated in Schedule A, then this Policy is subject to the following:

(i) where no subsequent improvement has been made, as to any partial loss, the Company shall only pay the loss pro rata in the proportion that the amount of insurance at Date of Policy bears to the total value of the estate or interest at Date of Policy; or

(ii) where a subsequent improvement has been made, as to any partial loss, the Company shall only pay the loss pro rata in the proportion that 120 percent of the Amount of Insurance stated in Schedule A bears to the sum of the Amount of Insurance stated in Schedule A and the amount expended for the improvement.

The provisions of this paragraph shall not apply to costs, attorneys' fees and expenses for which the Company is liable under this policy, and shall only apply to that portion of any loss which exceeds, in the aggregate, 10 percent of the Amount of Insurance stated in Schedule A.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. APPORTIONMENT

If the land described in Schedule A consists of two or more parcels which are not used as a single site, and a loss is established affecting one or more of the parcels but not all, the loss shall be computed and settled on a pro rata basis as if the amount of insurance under this policy was divided pro rata as to the value on Date of Policy of each separate parcel to the whole, exclusive of any improvements made subsequent to Date of Policy, unless a liability or value has otherwise been agreed upon as to each parcel by the Company and the insured at the time of the issuance of this policy and shown by an express statement or by an endorsement attached to this policy.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto.

## 11. LIABILITY NONCUMULATIVE

It is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy to the insured owner.

## 12. PAYMENT OF LOSS

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 13. SUBROGATION UPON PAYMENT OR SETTLEMENT

**(a) The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to these rights and remedies in the proportion which the Company's payment bears to the whole amount of the loss.

If loss should result from any act of the insured claimant, as stated above, that act shall not void this policy, but the Company, in that event, shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

**(b) The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

## 14. ARBITRATION

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 16. SEVERABILITY

In the event any provision of the policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 17. NOTICES, WHERE SENT

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at:   2 Park Avenue, New York, NY 10016



# Fidelity National Title Insurance Company of New York

## 2 Park Avenue
## New York, NY 10016

149

V/Woodbury
SBL: 245-1-149

Meister Abstract Corp.
11 N. Airmont Road, Suite 12
Suffern N.Y. 10901

BARGAIN AND SALE DEED
WITH COVENANT AGAINST GRANTOR'S ACTS

THIS INDENTURE made the 2nd day of November, two thousand seventeen

BETWEEN MENDEL STERN, residing at 15 Dinev Road, Monroe, New York 10950, party of the first part, and AHARON OSTREICHER, residing at 113 Forest Avenue, Monroe, New York 10950, party of the second part,

WITNESSETH that the party of the first part, in consideration of TEN AND 00/100 ($10.00) DOLLARS, lawful money of the United States, and other good and valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

SEE SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER with all rights, privileges and easements and SUBJECT to all covenants, easements, reservations and restrictions of record affecting said premises.

BEING AND INTENDED to be the same premises described in a deed dated February 16, 2017 from WILLIAM DONG and JOENA CHAN to AHARON OSTREICHER and recorded in the Orange County Clerk's Office on February 22, 2017, in Liber 14185 of Deeds at page 478.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof,

SUBJECT to the Declaration of Covenants and Restrictions, dated August 9, 1995, made by HIGHLAND LAKE ESTATES, INC. and COMPASS HOMES, INC. Said Declaration was recorded in the Orange County Clerk's Office on August 15, 1995, in Liber 4256 at page 324.

TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises,

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

parcels transferred on the deed _____ # of Parcels

Deed
Property       * FRONT FEET    X    * DEPTH    OR    0.46
Size                                                * ACRES

□ Part of a Parcel

6. Seller    Stern
Name    * LAST NAME/COMPANY

LAST NAME/COMPANY          Mendel
                          FIRST NAME

*7. Select the description which most accurately describes the
use of the property at the time of sale:

A. One Family Residential

CITY OR TOWN                              * FIRST NAME

(Only if Part of a Parcel) Check as they apply:    STATE    ZIP CODE

4A. Planning Board with Subdivision Authority Exists

4B. Subdivision Approval was Required for Transfer

4C. Parcel Approved for Subdivision with Map Provided    □
                                                          □
                                                          □
* FIRST NAME

Check the boxes below as they apply:
8. Ownership Type is Condominium
9. New Construction on a Vacant Land
10A. Property Located within an Agricultural District    □
10B. Buyer received a disclosure notice indicating that the property is in an    □
Agricultural District

## SALE INFORMATION

11. Sale Contract Date    04/07/2017

* 12. Date of Sale/Transfer    11/02/2017

*13. Full Sale Price    420,000.00

( Full Sale Price is the total amount paid for the property including personal property.
This payment may be in the form of cash, other property or goods, or the assumption of
mortgages or other obligations.) Please round to the nearest whole dollar amount.

14. Indicate the value of personal
property included in the sale    0.00

15. Check one or more of these conditions as applicable to transfer:
    A. Sale Between Relatives or Former Relatives
    B. Sale between Related Companies or Partners in Business.
    C. One of the Buyers is also a Seller
    D. Buyer or Seller is Government Agency or Lending Institution
    E. Deed Type not Warranty or Bargain and Sale (Specify Below)
    F. Sale of Fractional or Less than Fee Interest (Specify Below)
    G. Significant Change in Property Between Taxable Status and Sale Dates
    H. Sale of Business is Included in Sale Price
    I. Other Unusual Factors Affecting Sale Price (Specify Below)
☒  J. None

Comment(s) on Condition:

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

16. Year of Assessment Roll from which information taken(YY)    17

*18. Property Class    210

*20. Tax Map Identifier(s)/Roll Identifier(s) (If more than four, attach sheet with additional identifier(s))
245-1-149

*17. Total Assessed Value    165,000

*19. School District Name    Monroe Woodbury

## CERTIFICATION

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful
false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

SELLER SIGNATURE

_____    11/2/17
SELLER SIGNATURE    DATE

BUYER SIGNATURE

_____    11/2/17
BUYER SIGNATURE    DATE

BUYER CONTACT INFORMATION
(Enter information for the buyer. Note, if buyer is LLC, society, association, corporation, joint stock company, estate or
entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible
party who can answer questions regarding the transfer must be entered. Type or print clearly.)

Ostreicher                          Aharon
* LAST NAME                          FIRST NAME

AREA CODE                          *TELEPHONE NUMBER (Ex: 9999999)

11    Vanderbilt Drive
* STREET NUMBER    * STREET NAME

Monroe                                    NY    10950
*CITY OR TOWN                          *STATE    *ZIP CODE

BUYER'S ATTORNEY

Fein                                Alan
LAST NAME                          FIRST NAME

(845)    369-1000
AREA CODE    TELEPHONE NUMBER (Ex: 9999999)

A HARI OSTREICHER



**ORANGE COUNTY – STATE OF NEW YORK**
ANN G. RABBITT, COUNTY CLERK
255 MAIN STREET
GOSHEN, NEW YORK 10924

---

**COUNTY CLERK'S RECORDING PAGE**
***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***

---

Recording:

| | |
|---|---:|
| Recording Fee | 40.00 |
| Cultural Ed | 14.25 |
| Records Management – Coun | 1.00 |
| Records Management – Stat | 4.75 |
| TP584 | 5.00 |
| RP5217 Residential/Agricu | 116.00 |
| RP5217 – County | 9.00 |
| Sub Total: | 190.00 |

BOOK/PAGE: 14336 / 622
INSTRUMENT #: 20170089900

Receipt#: 2422853
Clerk: DB
Rec Date: 12/18/2017 09:39:59 AM
Doc Grp: D
Descrip: DEED
Num Pgs: 4
Rec'd Frm: Surfside Abstract Inc.

Party1: MEMOLI FRANK
Party2: SABEL GITEL
Town: WOODBURY (TN)
245-1-7

| | |
|---|---:|
| Transfer Tax | |
| Transfer Tax – State | 2200.00 |
| Sub Total: | 2200.00 |
| Total: | 2390.00 |

**** NOTICE: THIS IS NOT A BILL ****

***** Transfer Tax *****
Transfer Tax #: 4784
Transfer Tax
Consideration: 550000.00

| | |
|---|---:|
| Transfer Tax – State | 2200.00 |
| Total: | 2200.00 |

Payment Type:    Check ___
                 Cash ___
                 Charge ___
                 No Fee ___

Comment: _____

Ann G. Rabbitt
Orange County Clerk

Record and Return To:

ELECTRONICALLY RECORDED BY SIMPLIFI

# BARGAIN AND SALE DEED WITH COVENANT AGAINST GRANTOR'S ACTS (INDIVIDUAL OR CORPORATION)

CAUTION: THIS AGREEMENT SHOULD BE PREPARED BY AN ATTORNEY AND REVIEWED BY ATTORNEYS FOR SELLER AND PURCHASER BEFORE SIGNING.

*THIS INDENTURE,* made the 30th day of November, 2017       *BETWEEN*

**FRANK MEMOLI AND LOURDES MEMOLI,** husband and wife, residing at 6 Princeton Drive, Highland Mills, New York 10930, party of the first part, and

~~JOEL SABEL AND GITEL SABEL,~~ husband and wife, residing at 19 Chevron Road, Unit 301, Monroe, New York 10950, party of the second part,

*WITNESSETH,* that the party of the first part, in consideration of Ten Dollars and No Cents ($10.00), lawful money of the United States, paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

*ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND,* with the buildings and improvements thereon erected, situate, lying and being in the Village of Woodbury, County of Orange and State of New York, being more particularly bounded and described on Schedule A annexed hereto and made a part hereof.

**BEING   THE SAME PREMISES CONVEYED** by deed dated July 19, 2002 from **AAA DEVELOPERS AND MANAGEMENT INC.** f/k/a AA STARR ENTERPRISES to **FRANK MEMOLI AND LOURDES MEMOLI,** husband and wife, which deed was duly recorded in the Orange County Clerk's Office on the 31st day of July, 2002 in Liber 5955 of Deeds at Page 181.

*TOGETHER* with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof;   *TOGETHER* with the appurtenances and all the estate and rights of the party of the first part in and to said premises.

*TO HAVE AND TO HOLD* the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.  *AND* the party of the first part, covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

*AND* the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same  first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

*IN WITNESS WHEREOF,* the party of the first part has duly executed this deed the day and year first above written.

FRANK MEMOLI

_LOURDES MEMOLI_

**Acknowledgment by a Person Within New York State (RPL § 309-a)**

STATE OF NEW YORK      )
COUNTY OF ORANGE     ) ss.:
                      )

On the 29th day of November, 2017, before me, the undersigned, personally appeared **FRANK MEMOLI**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the  individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

PATRICK D. HICKEY
Notary Public, State of New York
Registration #02HI6338304
Qualified in Dutchess County
Commission Expires March 7, 20___

STATE OF NEW YORK      )
COUNTY OF ORANGE     ) ss.:
                      )

On the 29th day of November, 2017, before me, the undersigned, personally appeared **LOURDES MEMOLI**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the  individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

PATRICK D. HICKEY
Notary Public, State of New York
Registration #02HI6338304
Qualified in Dutchess County
Commission Expires March 7, 20___

_BARGAIN & SALE DEED with COVENANTS AGAINST GRANTOR'S ACT_

FRANK MEMOLI AND
LOURDES MEMOLI, husband and wife

To

JOEL SABEL AND
GITEL SABEL, husband and wife

Section 245
Block   1
Lot     7
County of Orange, Village of Woodbury
Street Address: 6 Princeton Drive,
Highland Mills, New York 10930

**Return By Mail To:**

Charles Mandlebaum, Esq.
3910 14th Avenue
Brooklyn, NY 11218
Telephone: (718) 431-1166

-2-

Title No: **STO-1903**

## SCHEDULE A DESCRIPTION

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Woodbury, County of Orange and State of New York, being more particularly known and designated as Lot No. 7 as shown on a map entitled, "Subdivision for Highland Lake Estates" which map is filed in the Orange County Clerk's Office as Map No. 46-94, the said lot on the said filed map being more particularly bounded and described as follows:

**BEGINNING** at a point on the southwesterly side of Princeton Drive intersecting the division line between Lots No 7 and 8 on the aforesaid file map;

**RUNNING THENCE** along the southwesterly side of Princeton Drive, the following five (5) courses and distances:

Along the arc of a curve bearing to the left having a radius of 310.00', a distance of 32.15' to a point of reverse curve;

Along the arc of a curve bearing to the right having a radius of 175.00', a distance of 133.18' to a point;

South 09 degrees 52'34" East 25.00 feet to a point;

Along the arc of a curve bearing to the right having a radius of 25.00', a distance of 23.18' to a point;

Along the arc of a curve bearing to the left having a radius of 70.00', a distance of 79.87' to the division line between Lots 7 and 6 on the aforesaid filed map;

**THENCE** along the said division line, North 86 degrees 08' 23" west 225.07 feet to a point of intersection of Lots No. 6, 7 and 8 on the aforesaid filed map;

**THENCE** along the division line between Lots 7 and 8 on the aforesaid filed map North 32 degrees 23' 23" east 285.00 feet to the southwesterly side of Princeton Drive, the point or place of **BEGINNING**.

**For Information Only:**
**SAID** premises being known as 6 Princeton Drive, Highland Mills, New York

| FOR COUNTY USE ONLY | | New York State Department of |
|---|---|---|
| C1. SWIS Code | | **Taxation and Finance** |
| C2. Date Deed | Swis Code # 335889 | Office of Real Property Tax Services |
| C3. Book | Date Deed Recorded 12/18/2017 | **RP- 5217-PDF** |
| | Bk # 14336   Pg # 622 | Real Property Transfer Report (8/10) |
| | C4. Page | |

**PROPERTY INFORMATION**

| 1. Property Location | 6 | | Priceton Drive | | |
|---|---|---|---|---|---|
| | * STREET NUMBER | | * STREET NAME | | |
| | Highland Mills | | VILLAGE | | 10930 |
| | * CITY OR TOWN | | | | * ZIP CODE |

| 2. Buyer Name | Sabel | | Gitel | |
|---|---|---|---|---|
| | * LAST NAME/COMPANY | | FIRST NAME | |
| | LAST NAME/COMPANY | | FIRST NAME | |

**3. Tax Billing Address** Indicate where future Tax Bills are to be sent if other than buyer address(at bottom of form)

| LAST NAME/COMPANY | | FIRST NAME |
|---|---|---|
| STREET NUMBER AND NAME | CITY OR TOWN | STATE   ZIP CODE |

**4. Indicate the number of Assessment** Roll parcels transferred on the deed   1   # of Parcels   OR   ☐ Part of a Parcel

(Only if Part of a Parcel) Check as they apply:
4A. Planning Board with Subdivision Authority Exists ☐
4B. Subdivision Approval was Required for Transfer ☐
4C. Parcel Approved for Subdivision with Map Provided ☐

**5. Deed Property Size**   X   OR   0.00
* FRONT FEET   * DEPTH   * ACRES

| 6. Seller Name | Memoli | | Frank | |
|---|---|---|---|---|
| | * LAST NAME/COMPANY | | FIRST NAME | |
| | Memoli | | Lourdes | |
| | LAST NAME/COMPANY | | FIRST NAME | |

**\*7. Select the description which most accurately describes the** use of the property at the time of sale:

A. One Family Residential

Check the boxes below as they apply:
8. Ownership Type is Condominium ☐
9. New Construction on a Vacant Land ☐
10A. Property Located within an Agricultural District ☐
10B. Buyer received a disclosure notice indicating that the property is in an Agricultural District ☐

**SALE INFORMATION**

| 11. Sale Contract Date | 08/02/2017 |
|---|---|
| * 12. Date of Sale/Transfer | 11/30/2017 |
| *13. Full Sale Price | 550,000 .00 |

( Full Sale Price is the total amount paid for the property including personal property.
This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

**14. Indicate the value of personal** property included in the sale   .00

**15. Check one or more of these conditions as applicable to transfer:**
☐ A. Sale Between Relatives or Former Relatives
☐ B. Sale between Related Companies or Partners in Business.
☐ C. One of the Buyers is also a Seller
☐ D. Buyer or Seller is Government Agency or Lending Institution
☐ E. Deed Type not Warranty or Bargain and Sale (Specify Below)
☐ F. Sale of Fractional or Less than Fee Interest (Specify Below)
☐ G. Significant Change in Property Between Taxable Status and Sale Dates
☐ H. Sale of Business is Included in Sale Price
☐ I. Other Unusual Factors Affecting Sale Price (Specify Below)
☒ J. None
Comment(s) on Condition:

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

| 16. Year of Assessment Roll from which information taken(YY) 17 | *17. Total Assessed Value | 206,300 |
|---|---|---|
| *18. Property Class 210 | 1 | *19. School District Name   Monroe-Woobury |

*20. Tax Map Identifier(s)/Roll Identifier(s) (If more than four, attach sheet with additional identifier(s))

245-1-7

**CERTIFICATION**

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

| SELLER SIGNATURE | BUYER CONTACT INFORMATION |
|---|---|

(Enter information for the buyer. Note: If buyer is LLC,society, association, corporation, joint stock company, estate or entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible party who can answer questions regarding the transfer must be entered. Type or print clearly.)

SELLER SIGNATURE   1/20/17
BUYER SIGNATURE   11/30/17
BUYER SIGNATURE   11/30/17   DATE

| Sabel | | Gitel | |
|---|---|---|---|
| * LAST NAME | | * FIRST NAME | |
| (718) | 431-1166 | | |
| * AREA CODE | * TELEPHONE NUMBER (Ex: 9999999) | | |
| 19 | Chevron Road Unit 301 | | |
| * STREET NUMBER | * STREET NAME | | |
| Monroe | | NY | 10950 |
| * CITY OR TOWN | | * STATE | * ZIP CODE |

**BUYER'S ATTORNEY**

| Mandelbaum | | Charles |
|---|---|---|
| LAST NAME | | FIRST NAME |
| AREA CODE | | TELEPHONE NUMBER (Ex: 9999999) |

# BLUSTEIN, SHAPIRO, RICH & BARONE, LLP

## ATTORNEYS AT LAW

**BURT J. BLUSTEIN**
**MICHAEL S. BLUSTEIN**
**RICHARD J. SHAPIRO ♦**
**GARDINER S. BARONE**
**RITA G. RICH**
**JAY R. MYROW**
**WILLIAM A. FRANK**
**AUSTIN F. DUBOIS♦^†**

*ALSO ADMITTED IN PA\**
*ALSO ADMITTED IN NJ^*
*MASTER OF LAWS IN TAXATION†*

**10 MATTHEWS STREET**
**GOSHEN, NEW YORK 10924**
**(845) 291-0011**
**FAX (845) 291-0021**
bsr@mid-hudsonlaw.com
www.mid-hudsonlaw.com

**RAYMOND P. RAICHE^**
**MARCELLO CIRIGLIANO**
**DIANA PUGLISI**
**JEANINE GARRITANO WADESON**
**BRIAN M. NEWMAN^**
**MEGAN R. CONROY**
**REBECCA C. JOHNSON**
**ARTHUR SHAPIRO**
OF COUNSEL
**JUSTICE DAVID S. RITTER**
Appellate Division (Ret.)
OF COUNSEL
**CHARLES A. JUDELSON**
1942-2014

January 31, 2017

Melech Kraus
P.O. Box 376
Highland Mills, New York 10930

Re:   **Kraus from Carneglia**
      **Premises: 29 Vanderbilt Drive, Highland Mills, New York**
      **Our File: 16-1044**

Dear Mr. Kraus:

In connection with the above referenced matter, enclosed please find your original:

- ☒ Deed of Conveyance;
- ☐ Survey;
- ☐ Title Insurance Policy;
- ☐ Satisfaction of Mortgage;
- ☐ Mortgage;
- ☐ Promissory Note.

The enclosed are **valuable documents, and should be safely stored with your other valuables for future reference.**

If you have any questions, or if we can be of assistance to you in the future, please feel free to contact us.  Thank you.

Very truly yours,
BLUSTEIN, SHAPIRO, RICH & BARONE, LLP

Emily A. Howell. Legal Assistant

Enclosure



**ORANGE COUNTY – STATE OF NEW YORK**
ANN G. RABBITT, COUNTY CLERK
255 MAIN STREET
GOSHEN, NEW YORK 10924

**COUNTY CLERK'S RECORDING PAGE**
***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***

Recording:

| | |
|---|---:|
| Recording Fee | 35.00 |
| Cultural Ed | 14.25 |
| Records Management – Coun | 1.00 |
| Records Management – Stat | 4.75 |
| TP584 | 5.00 |
| RP5217 Residential/Agricu | 116.00 |
| RP5217 – County | 9.00 |
| Sub Total: | 185.00 |

BOOK/PAGE:  14132 / 908
INSTRUMENT #:  20160072400

Receipt#:: 2221837
Clerk:  KP
Rec Date: 11/03/2016 03:59:23 PM
Doc Grp:  D
Descrip:  DEED
Num Pgs:  3
Rec'd Frm: CTI ABSTRACT CORP

Party1:  CARNEGLIA CHRISTOPHER  J
Party2:  KRAUS MELECH
Town:    WOODBURY (VLG)
         245-1-99

| | |
|---|---:|
| Transfer Tax | |
| Transfer Tax – State | 1780.00 |
| Sub Total: | 1780.00 |
| Total: | 1965.00 |

**** NOTICE: THIS IS NOT A BILL ****

***** Transfer Tax *****
Transfer Tax #: 2954
Transfer Tax
Consideration: 445000.00

| | |
|---|---:|
| Transfer Tax – State | 1780.00 |
| Total: | 1780.00 |

Payment Type:    Check ____
                 Cash ____
                 Charge ____
                 No Fee ____

Comment: _____

Ann G. Rabbitt
Orange County Clerk

Record and Return To:

BLUSTEIN SHAPIRO RICH & BARONE LLP
10 MATTHEWS ST
GOSHEN, NY 10924

Form 8002 (3/00) — Bargain and Sale Deed, with Covenants against Grantor's Acts — Individual or Corporation. (Single sheet)
CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**THIS INDENTURE,** made the 27th day of October, 2016
**BETWEEN** CHRISTOPHER J. CARNEGLIA and WENDY R. CARNEGLIA
29 Vanderbilt Drive, Highland Mills, NY 10930

party of the first part, and

MELECH KRAUS
14 Dinev Road, #302, Monroe, NY 10950

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village and Town of Woodbury, County of Orange and State of New York, being known and designated as Lot #99 on a certain map entitled, "Highland Lake Estates" and filed in the Orange County Clerk's Office on 3/31/94 as Map No. 47-94, being further described as follows:

BEGINNING at a point on the southerly line of Vanderbilt Drive and running in an easterly direction along Vanderbilt Drive South 48° 35' 07" East 125 feet to a point;

THENCE leaving said Vanderbilt Drive and running in a southerly direction, South 41° 24' 53" West 160 feet to a point;

THENCE running in an westerly direction, North 41° 24' 53" East 160 feet to the point or place of BEGINNING.

BEING the same premises conveyed to the grantors by Deed from James E. Hartigan, Jr. and Nancy A. Hartigan dated March 29, 2005 and recorded April 14, 2005 in Liber 11810 page 1252 as corrected in Liber 12088 page 410.

TOGETHER with all right, title and interest, if any, of the party of the first part, in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

S 245
B 1
L 99

Acknowledgement taken in New York State

State of New York, County of  Orange                                    , ss:

On the 27th day of October , in the year 2016 before me,
the undersigned, personally appeared  Christopher J.
Carneglia
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed the instrument.


                                             _____
                                                    Notary Public

MORTON MARSHAK
Notary Public, State of New York
Qualified in Orange County
Term Expires December 31, 20 17

### Acknowledgement by Subscribing Witness taken in New York State

State of New York, County of                                    , ss:

On the        day of                , in the year        , before me,
the undersigned, personally appeared

the subscribing witness to the foregoing instrument, with whom I
am personally acquainted, who being by me duly sworn, did
depose and say, that he/she/they reside(s) in

that he/she/they know(s)
to be the individual described in and who executed the
foregoing instrument; that said subscribing witness was
present and saw said
execute the same; and that said witness at the same time
subscribed his/her/their name(s) as a witness thereto..


Title No.: _____



                         TO


---

Acknowledgement taken in New York State

State of New York, County of  Orange                                    , ss:

On the 27th day of October , in the year 2016, before me,
the undersigned, personally appeared  Wendy R. Carneglia
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s) or the person upon behalf of which
the individual(s) acted, executed the instrument.


                                             _____
                                                    Notary Public

MORTON MARSHAK
Notary Public, State of New York
Qualified in Orange County
Term Expires December 31, 20 17

### Acknowledgement taken outside New York State

*State of                , County of,
*(or insert District of Columbia, Territory, Possession or
Foreign Country)

On the        day of                , in the year        , before me,
the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies),
and that by his/her/their signature(s) on the instrument, the
individual(s) or the person upon behalf of which the individual(s)
acted, executed the instrument, and that such individual made
such appearance before the undersigned in the

(add the city or political subdivision and the sate or country or
other place the acknowledgement was taken).


DISTRICT

SECTION

BLOCK

LOT

COUNTY OR TOWN

RETURN BY MAIL TO:

Diana Caccioppoli-Puglisi, Esq.
Blustein, Shapiro, Rich & Barone
10 Matthews Street
Goshen, NY 10924
                    Zip No.

---

Distributed by
**Chicago Title Insurance Company**

BARGAIN AND SALE DEED

**THIS INDENTURE** made on   September 20, 2016

between:   PAUL F. ELLIS-GRAHAM and MARY GRAHAM
residing at:   16 Vanderbilt Drive
Highland Mills, New York 10930                **GRANTORS**

and:   YOEL FRIED
residing at:

                                            **GRANTEES**

S: 245
B: 1
L: 120

**W I T N E S S E T H :**

In consideration of TEN DOLLARS ($10.00), and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantors do hereby grant and release unto Grantees, and their heirs, executors, administrators, successors and assigns forever.

**ALL** that certain tract, piece or parcel of land, with the buildings and improvements therein erected, situate, lying and being in the Village of Woodbury, County of Orange, State of New York, and being more accurately bounded and described as follows:

SEE SCHEDULE "A"

BEING AND INTENDED TO BE the same premises conveyed to PAUL F. ELLIS-GRAHAM and MARY GRAHAM, who acquired title by deed from HIGHLAND LAKE ESTATES, INC., dated November 13, 1995 and recorded in the Orange County Clerk's office in Liber 4301 of Deeds at page 66.

**TOGETHER** with all right, title and interest, if any, of Grantor in and to any streets and roads abutting said premises to the center lines thereof;

**TOGETHER** with the appurtenances and all the estate and rights of Grantor in and to said premises;

**TO HAVE AND TO HOLD** the premises herein granted unto Grantees, as tenants by the entirety, and their heirs, executors, administrators, successors and assigns forever.

Grantor covenant the Grantor has not done or suffered anything whereby said premises have been encumbered in any way whatever, except as set forth herein.

**RIVERSIDE ABSTRACT, LLC**

as Agent for

Old Republic National Title Insurance Company

SCHEDULE A – DESCRIPTION

Title No.: RANY-24841

All that certain plot, piece or parcel of land situate, lying and being in the Town of Woodbury, County of Orange, State of New York and being more accurately bounded and described as follows:

Being known and designated as Lot No. 120 on a certain subdivision map entitled "Highland Lake Estates" and filed in the Orange County Clerk's Office on March 31, 1994 as Map No. 47-94.

Note: Address, Block & Lot shown for informational purposes only

Designated as Section 245, Block 1, Lot 120 and also known as 16 Vanderbilt Drive, Yorktown Heights, NY.

Schedule A Description  Page 1 of 1

Grantor, in compliance with Section 13 of the Lien Law, covenant that they will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of improvements before using any part of the total of the same for any purpose.

```
S: 245
B: 1
L: 120
```

**IN WITNESS WHEREOF,** Grantor has duly executed this deed on the date first above written.

_____
Paul F. Ellis-Graham

_____
Mary Graham

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF ORANGE       )

On September 20, 2016 before me, personally appeared PAUL F. ELLIS-GRAHAM and MARY GRAHAM personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their capacity, and that by their signatures on the instrument, the individuals, or the persons upon behalf of which the individuals acted, executed the instrument.

_____
NOTARY PUBLIC

JEFFREY ALBANESE
Notary Public, State of New York
No. 4927405
Qualified in Orange County
Term Expires March 21, _____

RECORD AND RETURN TO:
Isaac Scheiner P.C.
441 Route 306, Suite 2
Monsey, NY 10952

*THIS INDENTURE,* made the 2nd day of October, Two Thousand Seventeen (2017),

*BETWEEN:   ZYGMUNT A. SZPRENGIEL and HALINA B. SZPRENGIEL,*

<div align="center">

residing at 3 Cornell Lane
Highland Mills, NY 10930

</div>

party of the first part, and

<div align="center">

ABRAHAM Z. KOHN and YECHIEL KOHN,
residing    69 Lynch Street
Brooklyn, NY 11206

</div>

party of the second part,

*WITNESSETH,* that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

*ALL* that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town and Village of Woodbury, County of Orange and the State of New York, being more particularly described as follows:

<div align="center">

DESCRIPTION ATTACHED

</div>

Section-245
Block-1
Lot-15
County/ Town-Orange/Woodbury
Property Address:   3 Cornell Lane, Highland Mills, 10930

*BEING AND INTENDED TO BE THE SAME PREMISES CONVEYED TO THE GRANTOR HEREIN BY DEED FROM COMPASS HOMES, INC. DATED 11/27/96 RECORDED IN THE ORANGE COUNTY CLERK'S OFFICE ON 11/29/96 IN LIBER 4489 AT PAGE 241, AS CORRECTED ON 03/14/97 IN LIBER 4541 PAGE 1*

*TOGETHER* with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; *TOGETHER* with the appurtenances and all the estate and rights of the party of the first part in and to said premises; *TO HAVE AND TO HOLD* the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

*IN WITNESS WHEREOF*, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

ZYGMUNT A. SZPRENGIEL

HALINA B. SZPRENGIEL

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF ORANGE         )


On the 2nd day of October in the year 2017, before me, the undersigned, personally appeared  ZYGMUNT A. SZPRENGIEL and HALINA B. SZPRENGIEL personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

JOHN T. O'FRIEL
Notary Public, State of New York
No. 02OF8200204
Qualified in Orange County
Commission Expires July 31, 20__

Record and Return to:

Isaac Scheiner, Esq.
441 Route 306
Monsey, NY 10952

ZYGMUNT A. SZPRENGIEL and
HALINA B. SZPRENGIEL

To

ABRAHAM Z. KOHN and
YECHIEL KOHN

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 16th day of August, 2017

BETWEEN

James R. Feigenbutz and Rachael Feigenbutz f/k/a Rachael McCallen
13 Barnard Ct.
Highland Mills, NY 10930
party of the first part, and

Israel Ostreicher and Esther Ostreicher, husband and wife
27 Chevron Rd.
Monroe, NY 10950
party of the second part,

WITNESSETH, that the party of the first part, in consideration of TEN and 00/100 ($10.00)-----
-------------------------------------------------------------------------- dollars
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs
or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the Village and Town of Woodbury, County of Orange,
State of New York and being more fully described in Schedule A
annexed hereto and made a part hereof.

Sect. 245

Blk. 1

Lot 127

BEING AND INTENDED to be the same premises conveyed by deed
from Qu Guo and Li Ye, husband and wife, dated July 22, 2013
and recorded July 29, 2013 in the Orange County Clerk's office
in Book 13619 Page 579.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads
abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all
the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the
premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of
the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything
whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consideration
as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same
first to the payment of the cost of the improvement before using any part of the total of the same for any other
purpose. The word "party" shall be construed as if it read "parties" when ever the sense of this Indenture so
requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

_____

JAMES R. FEIGENBUTZ

_____

RACHAEL FEIGENBUTZ f/k/a
Rachael McCallen

Standard N.Y.B.T.U. Form 8002 - Bargain and Sale Deed, with Covenant against Grantor's Acts – Uniform Acknowledgment
Form 3290

# OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

**SCHEDULE A**
**DESCRIPTION**

Title Number:   **MAC5232**

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Village and Town of Woodbury, County of Orange, State of New York and being more accurately bounded and described as follows:

BEING known and designated as Lot No. 127 on a certain subdivision map entitled "HIGHLAND LAKE ESTATES" and filed in the Orange County Clerk's Office on March 31, 1994 as Map No. 47-94.

FOR INFORMATION ONLY:
Premises being known as and by 13 Barnard Ct, Highland Mills, New York;
Section: 245; Block: 1; Lot: 127



Schedule A Description Page 1 of 1

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of **Rockland**    ss:

On the 1st day of August in the year 2017
before me, the undersigned, personally appeared
**James R. Feigenbutz**
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

RENEE E. FEIN
Notary Public, State of New York
No. 01FE5007340
Qualified in Rockland County
Commission Expires January 25, 2019

State of New York, County of **Orange**    ss:

On the 10th day of August in the year 2017
before me, the undersigned, personally appeared
**Rachael Feigenbutz f/k/a Rachael McCallen**
personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

GARY S. GOLDSTEIN
Notary Public, State of NY
Orange County Comm. 06007525
Expires Feb. 1, 2019

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of _____    ss:

On the ____ day of _____ in the year ____ before me, the undersigned, personally appeared

_____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____ in _____
(Insert the City or other political subdivision)    (and Insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

BARGAIN AND SALE DEED
WITH COVENANT AGAINST GRANTOR'S ACTS

Title No. MAC 5232

FEIGENBUTZ and MCCALLEN
TO
OSTREICHER

SECTION   245
BLOCK   1
LOT   127
COUNTY OR TOWN   Woodbury
STREET ADDRESS   13 Barnard Ct.
                 Highland Mills

Recorded at Request of
COMMONWEALTH LAND TITLE INSURANCE COMPANY

RETURN BY MAIL TO:

Alan Fein, Esq.
2 Executive Blvd.
Suffern, NY 10901

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS
Distributed by
**Commonwealth**
A LANDAMERICA COMPANY
COMMONWEALTH LAND TITLE INSURANCE COMPANY

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE



JUSTICE COURT OF THE TOWN OF WOODBURY
COUNTY OF ORANGE:
------------------------------------------------------------------X
HIGHLAND LAKE ESTATES, H.O.A., INC.,

                                       <u>DECISION AND ORDER</u>

                         Plaintiff,

                     -against-
ISRAEL and ESTHER OSTREICHER
                       Defendant.
------------------------------------------------------------------X
HIGHLAND LAKE ESTATES, H.O.A., INC.,
                       Plaintiff,
                     -against-
GITEL SABEL

                       Defendant.
------------------------------------------------------------------X
HIGHLAND LAKE ESTATES, H.O.A., INC.,
                       Plaintiff,
                     -against-
ABRAHAM KOHN

                       Defendant.
------------------------------------------------------------------X
P R E S E N T:    HON. BRUCE A. SCHONBERG, TOWN JUSTICE

      A trial was held on December 12, 2018, within the Justice Court of the Town of Woodbury. The plaintiff, Highland Lake Estates H.O.A., Inc. was represented by Mark T. Starkman, associated with Simon Haysom LLC. The defendants were represented by Michael H. Sussman, associated with Sussman & Associates.

      For trial purposes the parties agreed and stipulated to a joint trial in which all evidence oral and/or written including the plaintiff's lone witness, Joseph Naddy, would serve as evidence as to each captioned party. At trial, the defense called Israel Ostreicher and Abraham Kohn.

      Plaintiff called Joseph Naddy, who is employed by Arthur Edwards, Inc. which is

the management company for the Highland Lake Estates, H.O.A, Inc.   Mr. Naddy testified as to the Homeowners Association's right to pursue maintenance fees and remedies for non payment. These remedies include the right to collect late fees on payments that are more than 30 days past due.

The defendants acknowledge not paying maintenance fees contending that the Homeowners Association has been discriminatory on the basis of religion. It is the Court's understanding that issues surrounding this claim are being litigated in a different venue and jurisdiction.

In addition to the above, the defendants contend that the plaintiff(s) lacked jurisdiction and failed to state a cause of action and furthermore argued that the Verified Complaint(s) filed by the plaintiff, Highland Lake Estates H.O.A., Inc. were defective, in that, the plaintiff's Complaints failed to allege that the named defendants were the actual owner(s) of the units in question.   Defendant(s) cite *Capital One Equipment v. Corrigan*, Index No. 653726/2 (December 17, 2017 Sup. Ct. N.Y. Cty.) in support of dismissal of the causes of action for failure to properly allege an ownership interest.

Plaintiffs' counsel during oral argument, argued that the term residence within their complaint equates to and/or has a common meaning of ownership.

The pleadings were made part of the court file.   In addition, the plaintiffs' Summons and Complaints were placed in evidence by the defendants.

A clear reading of the Complaints failed to properly indicate that the defendant(s) in each action were the property owner(s).   It is the Court's position that the term resident does not equate to actual property ownership.   A resident can certainly be a tenant, or other party who does not own the property.   The plaintiff has not sought to

amend the Verified Complaint(s) to cure the jurisdictional defective as to ownership.

Therefore, it is the finding of the Court that the plaintiff's Complaints are dismissed without prejudice;

The aforesaid constitutes the Decision Order of the Court.

E N T E R

Dated:  April 8, 2019
        Woodbury, New York

_____
HON. BRUCE A. SCHONBERG

Christopher B. Kleister, Esq.
KLEISTER LAW GROUP
85 East Main Street, Suite 2
Washingtonville, NY  10992

Michael H. Sussman, Esq.
SUSSMAN & ASSOCIATES
One Railroad Avenue, Suite 3
PO Box 1005
Goshen, NY  10924

Mark T. Starkman, Esq.
SIMON HAYSON LLC
One Railroad Avenue
Goshen, NY  10924