UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MENDEL STERN, *et al.*,

                        Plaintiffs.

   -against-

HIGHLAND LAKE HOMEOWNERS, *et al.*,

                        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/26/2021

No. 18-cv-4622 (NSR)
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

      Defendants Highland Lake Homeowners Association, Arthur Edwards, Inc., Archway Property Management, Inc., Carmine Mastrogiacomo, Christopher Perino, Alex Rubanovich, Nancy Diaz, and Ray Torres (collectively, "Defendants") bring this motion to vacate the Stipulation and Order entered on September 5, 2018 (the "So-Ordered Stipulation") pursuant to Rule 60(b) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs used a falsified affirmation to induce Defendants' to enter the So-Ordered Stipulation. (ECF No. 90.) Plaintiffs Mendel Stern, Aharon Ostreicher, Yochonon Markowitz, Abraham Kohn, Isaac Schwimmer, Esther Schwimmer, Joel Sabel, Yoel Fried, Fraida M. Fried, Melech Krauss, Israel Ostreicher and their families (collectively, "Plaintiffs") concede that they used a falsified affirmation but nonetheless oppose the motion. For the following reasons, the Court grants Defendants' motion pursuant to its inherent equitable powers and orders that the So-Ordered Stipulation be vacated.

## BACKGROUND

The instant dispute arises from Plaintiffs' use of an affirmation signed by a person other than the affirmant, without the affirmant's knowledge, in support of their motion for a preliminary injunction in 2018.

### The Initiation of Plaintiffs' Claims and Application for Preliminary Injunction

This matter was initiated on June 24, 2018, when Plaintiffs filed a complaint asserting various state and federal claims against Defendants for their alleged use of anti-Hasidic policies in the Highland Lake gated community within the Woodbury, New York ("Highland Lake"). (*See* Complaint (ECF No. 2).) After filing the Complaint, Plaintiffs sought a temporary restraining order and, subsequently, a conference on this application was held before Judge Katherine Polk Failla on August 14, 2018. (ECF No. 34.) During the August 14, 2018 Conference, the parties reached an interim agreement to temporarily resolve the issue before it could be heard before this Court. (*Id.*)

On August 22, 2018, Plaintiffs filed an order to show cause seeking a preliminary injunction "enjoining defendants, their successors in office, agents, employees and assigns from utilizing an entrance/exit gate for Highland Lake Estates which gate restricts access to plaintiffs' homes on account of their collective refusal to cooperate with the erection of said gate which is solely intended to restrict access to the property by persons associated with and related to plaintiffs and their religious community." (ECF No. 32.) Subsequently, Plaintiffs filed a document titled "Plaintiffs' Memorandum in Support of TRO" (referred to herein as "Pls' PI Mem.") (ECF No. 37) in which Plaintiffs argued that "defendants have violated both federal and state statutes intended to insure their civil rights" by, among other things, using "the gate to restrict Hasidic access" and otherwise engaging in "a pattern of overt discrimination against plaintiffs and those similarly situated." (Pls' PI Mem. at 3.) The vast majority of the memorandum goes no further

than summarizing the unverified allegations of the Complaint without citing any other source or identifying where in the Complaint these allegations were raised.  (*See* Pls' PI Mem at 1-12.)

Besides summarizing the Complaint, the only evidence cited in the memorandum is an affirmation purportedly signed by one of the plaintiffs, Isaac Schwimmer.  (*See* Pls' PI Mem. at 13-14) (citing the Affirmation of Isaac Schwimmer ("Schwimmer Aff.") (ECF No. 38).)  To this end, the Schwimmer Affirmation is the sole evidence submitted for the position that "there has been practically no crime in the [Highland Lake Estates] and [Defendant Highland Lake Estates Home Owners Association] intends to erect the security gates to deter entry into the community of Hasidic Jews and as a means of discouraging their interest in occupancy in the community."  (Pls' PI Mem. at 13 (citing Schwimmer Aff.).)  Likewise, the Schwimmer Affirmation is the sole form of evidence cited for the position that the use of the gates by Defendants "have substantially restricted vehicles entering the [Highland Lake Estates], disallowing school buses from picking up children near their homes, thereby burdening the religious practice of Hasidic families, including, but not limited to each plaintiff, and prohibiting delivery vehicles and car services, also knowingly imposing a disproportionate burden upon Hasidic families, again, including, but not limited to each plaintiff."  (Pls' PI Mem. at 13 (citing Schwimmer Aff.).)  The Schwimmer Affirmation is also the sole evidence cited for the positions that Hasidic women do not drive automobiles and instead must rely upon car services and delivery services for the provision of bare necessities which is complicated by the erection of the gate by Defendants.  (*See* Pls' PI Mem. at 13 (citing Schwimmer Aff.).)  Plaintiffs even contend in their memorandum that "[t]he annexed Schwimmer Affidavit [sic] further explains the basis for this application: Hasidic school children are now being dropped off on Ridge Road, a busy county thoroughfare because the bus company which provides them transportation to school during the summer cannot and will not pass through the gate."  (Pls' PI

Mem. at 14.)  In sum, the very core of Plaintiffs' theory, and the factual evidence supporting their motion for preliminary injunction, rely heavily and exclusively upon the Schwimmer Affirmation.

In relevant part, the Schwimmer Affirmation avers as follows: (I) Isaac Schwimmer is the affirmant and he resides in the Highland Lake Estates (Schwimmer Aff. ¶ 1), (II) Isaac Schwimmer initially moved to the development in 2016 and at that time there was no gate, nor was there any gate for over twenty years since Highland Lake Estates was first established (Schwimmer Aff. ¶ 2); (III) since 2016, there has been a noticeable increase in Hasidic residents within Highland Lake Estates and this has engendered significant hostility including through the amendment of by-laws designed to negatively impact the ability of Hasidic residents to conduct business (Schwimmer Aff. ¶ 3); (IV) the Defendants sought to erect a gate in order to make Highland Lake Estates inhospitable to Hasidic residents and used crime prevention as a pretext for this ploy despite the lack of any crime in the community (Schwimmer Aff. ¶ 4); (V) the use of the gate is particularly harmful to Hasidic residents because Hasidic women require taxicabs and vendors for transportation and household goods, respectively (Schwimmer Aff. ¶ 5); (VI) the use of the gates also prevents the Hasidic residents from sending their children to school because the bus companies cannot gain entrance past the gates and the children must instead be picked up and dropped off at a busy county roadway which the parents cannot reasonably access because they are "with infants" (Schwimmer Aff. ¶¶ 6-7); and (VII) the Plaintiffs do not have access codes to use the gates either because they have refused to pay fees or provide requested information to Defendants during the pendency of this litigation (Schwimmer Aff. ¶¶ 8-9).

### The August 29, 2018 Hearing and the So-Ordered Stipulation

After Plaintiffs' motion was fully briefed, on August 29, 2018, the Court held a hearing. During the hearing, Plaintiffs' counsel recited many of the factual arguments raised in his motion papers that relied upon Schwimmer Affirmation including, among other things, that: (1) the

Defendants falsely attribute crime prevention as their basis for erecting the gate even though there is no crime (*see* Transcript of the August 29, 2018 Hearing ("August 29 Hearing Tr.") (ECF No. 59), at 6:20.); (2) children are unable to access school because of the gate (*id.* at 7:12-9:1); and (3) Hasidic women are particularly negatively impacted because they customarily do not drive and depend upon vendors and drivers for various services that cannot access the community (*id.* at 5:8-17). Plaintiff also presented to the Court an apparently unfiled exhibit in support of their motion purporting to demonstrate that the bus company would not enter the Highland Lake Estates during the month of August. (*Id.* at 30:1-3.)

After the parties summarized their arguments, the Court asked the parties to speak with their clients to see if there was a means of resolving this dispute. (*Id.* at 51:1-19.) After a brief recess, the parties agreed in principle that, pending further litigation, the gates would remain open at all times except for Sunday through Friday between 1:30 am and 5:30 a.m., and Friday at sundown until Saturday at sundown. (*Id.* at 54:8-56:5.) As the parties had reached the agreement, the Court did not hold an evidentiary hearing and directed the parties to file a stipulation memorializing their agreement.

Carmine Mastrogiacomo, one of the named defendants in this action and the President of the Highland Lake Estates Homeowners Association, attended this hearing. (Affidavit of Carmine Mastrogiacomo ("Mastrogiacomo Aff.") (ECF No. 93) ¶ 16.) Relying upon the strength of the Schwimmer Affirmation as submitted and as presented through the arguments of Plaintiffs' counsel during the August 28 hearing, Mastrogiacomo and other defendants resolved to accept an agreement with Plaintiffs to resolve the preliminary injunction motion by entering the So-Ordered Stipulation pursuant to the terms discussed at Court. (*Id.* ¶ 18.)

The So-Ordered Stipulation was subsequently submitted to the Court and entered on September 5, 2018, stating, in relevant part that: (1) "[t]he gates shall remain in an open position, provided that between [a] 1:30 am [sic] and 5:30 a.m. Sunday through Friday of each week and [b] between sundown Friday and sundown Saturday each week, the gates may remain in a closed position"; (2) "[t]he HOA shall provide access codes to [certain] residents"; and (3) "[t]he terms shall remain in force and effect until resolution of the instant case by the district court or the entry of any other and further stipulation between the parties by which it is modified or altered." (*See* So-Ordered Stipulation.)

### Discovery Reveals Schwimmer Affirmation Was Not Signed by Isaac Schwimmer

After the So-Ordered Stipulation was entered, on October 25, 2018, the Court referred this case to Magistrate Judge Paul E. Davidson for general pretrial purposes including discovery. (ECF No. 46.) During discovery, on September 25, 2019, the Defendants took the deposition of Isaac Schwimmer, and discovered that he never reviewed or signed the Schwimmer Affirmation submitted in support of the motion for preliminary injunction, and that certain of the statements contained therein were inaccurate or outside of his knowledge. When attorneys for Defendants presented Isaac Schwimmer with the Schwimmer Affirmation, he stated that he did not recognize the signature and that it was not his own signature. (*See* Isaac Schwimmer Deposition Transcript ("Schwimmer Dep. Tr.") (ECF No. 92-9) at 69:25-70:12.) Separately, and among other things, Isaac Schwimmer testified that, contrary to the representations in the Schwimmer Affirmation, he had never said under oath that there was no criminal activity in Highland Lake Estates or that Esther Schwimmer was his wife (because she is not). (*See id.* at 34:14-22.) He also testified that he was aware of criminal activity that occurred in Highland Lake Estates including an incident in which two of his nephews were menaced by criminals brandishing deadly weapons. (*Id.* at 35:4-14.)

6

The following day, on September 26, 2019, Plaintiffs' counsel submitted a letter to the Court representing that the Schwimmer Affirmation was actually signed by non-party Abraham Schwimmer, the brother of Isaac Schwimmer, and that Plaintiffs' counsel was not aware of this when he submitted it to the Court.  (ECF No. 70.)  Subsequently, on December 12, 2019, the Court held a hearing in which Defendants requested leave to pursue a motion to vacate the instant So-Ordered Stipulation on the grounds that their assent to its terms was obtained through fraud.  (*See* ECF No. 82.)  The Court orally granted Defendants' leave to file such a motion.  (*Id.*)  The motion became fully briefed on April 1, 2020, and this Opinion follows.

## DISCUSSION

### I. Relief Under Rule 60(b)

Defendants exclusively seek relief pursuant to Rule 60(b).  As discussed below, regardless of whether they meet the applicable standard, relief under Rule 60(b) is unavailable because the challenged order does not qualify as a final order, judgment, or proceeding, and—even if it were available—it would be untimely.

*A.     Standard of Relief Under Rule 60(b)*

Rule 60(b) authorizes a court to relieve a party from a final judgment; however, a court may grant relief under Rule 60(b) only in "extraordinary circumstances." *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994) (citing *Ackermann v. United States*, 340 U.S. 193, 199-202 (1950)). Thus, a court "should only grant such a request when, without such relief, extreme hardship would result." *Pines v. Bruhn*, No. 98-CV-4263 (JG), 1999 WL 182671, at *1 (E.D.N.Y. Mar. 29, 1999) (citing *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990)).

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Wells v. City of New York*, No. 16-CV-825 (KAM)(ST), 2019 WL 1270816, at *3 (E.D.N.Y. Mar. 18, 2019) (quoting *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007)). An

7

executed settlement agreement is "binding and conclusive" and, in New York, such agreements are "strongly favored . . . and may not be lightly cast aside." *Id*. (citations omitted). Moreover, "it is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005) (citation omitted). Likewise, "in a Rule 60(b) motion, '[a] movant's burden is even more formidable where the movant has made a deliberate choice to enter into a settlement agreement as opposed to having litigated the case on the merits and lost.'" *Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*, No. 07-CV-349 LAP FM, 2012 WL 4471267, at *2 (S.D.N.Y. Sept. 21, 2012) (citing, *inter alia*, *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)).

Under these principles, "a court may vacate a stipulation of settlement only upon a showing of good cause, such as fraud, collusion, mistake, duress, lack of capacity, or where the agreement is unconscionable, contrary to public policy, or so ambiguous that it indicates by its terms that the parties did not reach agreement." *Rispler v. Spitz*, 377 F. App'x 111, 112 (2d Cir. 2010) (summary order) (citations omitted).

"[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989) (citing *Mastini v. American Tel. & Telegraph Co.*, 369 F.2d 378, 379 (2d Cir. 1966)). The burden of proof rests with the party seeking relief. *United States v. Int'l Brotherhood of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Further, "[t]he decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citation and internal quotation marks citation omitted).

B.   *Rule 60(b) is Inapplicable to Interlocutory Orders*

Though Plaintiff exclusively seeks relief under Rule 60(b) of the Federal Rules of Civil Procedure, "a preliminary injunction is not a final judgment or order, and therefore, Rule 60(b) is inapplicable." *Jones v. United States Postal Serv.*, No. 20 CIV. 6516 (VM), 2020 WL 6554904, at *8 (S.D.N.Y. Sept. 29, 2020); *see also Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("[A] preliminary injunction is not a 'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)."). Plaintiff does not identify any authority that suggests an interlocutory order such as the So-Ordered Stipulation, which by its terms expires upon resolution of this litigation, may be vacated pursuant to Rule 60(b).

C.   *Motion Under Rule 60(b)(3) is Untimely*

Under Rule 60(c)(1), a motion to vacate pursuant to Rule 60(b)(3) "must be made within a reasonable time" and "no later than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). "And it is settled that an appellant cannot circumvent the one year limitation by invoking the residual clause (6) of Rule 60(b)." *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972). The stipulation in this case was entered on September 5, 2018. (ECF No. 39.) Defendants sought leave to bring their motion during a status conference before the Court on December 12, 2019. (ECF No. 82.) Accordingly, even if Defendants' motion to vacate was not deficient because the So-Ordered Stipulation is an interlocutory order, it would be untimely to the extent it is predicated upon Rule 60(b)(3).

**II.    Inherent Equitable Powers of District Court to Revisit Interlocutory Orders**

Despite the finding that the Defendant's motion is procedurally deficient insofar as it seeks relief under Rule 60(b), the Court possesses inherent equitable powers to reconsider and modify its interlocutory orders prior to entry of judgment. *See* Fed. R. Civ. P. 60, 1946 amendment advisory committee's notes (noting that relief from interlocutory orders is "left subject to the

9

complete power of the court rendering them to afford such relief from them as justice requires."). As the Second Circuit has observed,

> A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment, whether they be oral, or written, and there is no provision in the rules or any statute that is inconsistent with this power . . .. Thus, whether the case sub judice be civil or criminal, so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.

*United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir.1982) (internal citations and alteration omitted); *accord United States v. Washington*, 48 F.3d 73, 79 (2d Cir.1995) (citing *LoRusso*, 695 F.2d at 53). Accordingly, as in *Cordillo v. Sos*, the Court concludes that it is appropriate to deem Defendants' motion to be "addressed to the inherent power of the Court to reconsider interlocutory orders prior to the entry of final judgment." No. 90 CIV. 9 (WCC), 1992 WL 36136, at *1 (S.D.N.Y. Feb. 18, 1992).

A litigant's use of fraud or misrepresentations to the court and other parties is a powerful equitable basis to reconsider or vacate an order procured through such deception. In *Bridgeforth v. Mckeon*, the plaintiff initially obtained an order denying defendants' motion to dismiss under Fed. R. Civ. P. 41(b) for failure to comply with an order directing him to appear for depositions by representing that he could not leave the state for his scheduled deposition and was in custody on the deposition dates. No. 09-CV-6162P, 2012 WL 3962378, at *2 (W.D.N.Y. Sept. 10, 2012). Subsequently, defendants "came forward with evidence discrediting [plaintiff's] explanation" for missing the deposition, including statements from plaintiff's probation officer affirming that plaintiff "could have sought and received permission to travel out of state and that he was not in custody on the specified dates." *Id.* In light of the "new evidence that [plaintiff] has made

10

misrepresentations to the Court" the district court reconsidered its order denying defendants' motion to dismiss and ultimately granted that motion. *Id.*

Here, Defendants request that the Court vacate the So-Ordered Stipulation because Defendants' assent to that stipulation was procured through fraudulent inducement or material misrepresentations. It is undisputed that the Schwimmer Affirmation was the sole party affirmation submitted by Plaintiffs in support of their motion for preliminary injunction. The remaining evidence, which is inconsequential, consisted of an unfiled attorney transmittal affirmation and an E-Mail introduced during the hearing. Moreover, on a motion for preliminary injunction, "'it has always been the rule that the movant bears the burden of persuasion to establish the situation meets the standard for a preliminary injunction, and must offer proof beyond the unverified allegations of the pleadings.'" *Silver v. Lavandeira*, No. 08CIV.6522JSRDF, 2009 WL 513031, at *6 (S.D.N.Y. Feb. 26, 2009) (quoting *Allens Creek / Corbetts Glen Preservation Group, Inc. v. Caldera*, 88 F.Supp.2d 77, 83 (W.D.N.Y.2000)). As in *Bridgeforth*, the entire evidentiary predicate supporting Plaintiffs' motion practice (in that case opposing to a motion to dismiss) has been proven to consist of misrepresentations. This counsels in favor of granting Defendants' motion because, absent the introduction of the Schwimmer Affirmation, Plaintiffs' motion for preliminary injunction would have been, on its face, unlikely to succeed—much less persuade a party to enter a stipulation affording similar injunctive relief without judicial intervention. On this basis alone, the Court grants Defendants' motion and vacates the So-Ordered Stipulation.

Separately, there is good reason to rescind the stipulation pursuant to principles of New York contract law. "A stipulation is a contract, to be enforced under principles of contract law." *In re Ladder 3 Corp.*, 571 B.R. 525, 533 (Bankr. E.D.N.Y. 2017), *subsequently aff'd*, 768 F. App'x 146 (2d Cir. 2019) (citing *In re Waters*, No. 99-31833, 2010 WL 2940858, at *1 (Bankr. D. Conn.

July 23, 2010); *In re Royster Co.*, 132 B.R. 684, 687–88 (Bankr. S.D.N.Y. 1991); *HLO Land Ownership Assocs. Ltd. P'ship. v. City of Hartford*, 248 Conn. 350, 727 A.2d 1260 (1999); *Miller v. Fitzpatrick*, 147 A.D.3d 845, 47 N.Y.S.3d 378 (2d Dep't 2017); *Ayers v. Ayers*, 92 A.D.3d 623, 624, 938 N.Y.S.2d 572 (2d Dep't 2012)). Under New York contract law,

> 'A contract induced by fraud . . . is subject to rescission, rendering it unenforceable by the culpable party'" (*International Exterior Fabricators, LLC v. Decoplast, Inc.*, 128 A.D.3d 1016, 1018, 9 N.Y.S.3d 662, quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Group*, LLC, 19 A.D.3d 273, 275, 798 N.Y.S.2d 14). The elements of a cause of action sounding in fraud are a material misrepresentation of a fact, made with knowledge of the falsity, an intent to induce reliance thereon, justifiable reliance on the misrepresentation, and damages (*see Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976; *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 868 N.E.2d 189; *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370; *Channel Master Corp. v. Aluminum Ltd. Sales*, 4 N.Y.2d 403, 406–407, 176 N.Y.S.2d 259, 151 N.E.2d 833). Where 'the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him [or her] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he [or she] must make use of those means, or he [or she] will not be heard to complain that he [or she] was induced to enter into the transaction by misrepresentations' (*Schumaker v. Mather*, 133 N.Y. 590, 596, 30 N.E. 755; *see ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1047, 10 N.Y.S.3d 486, 32 N.E.3d 921; *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 278, 929 N.Y.S.2d 3, 952 N.E.2d 995; *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 323, 184 N.Y.S.2d 599, 157 N.E.2d 597).

*1810 E & J Rest. Corp. v. Red & Blue Parrot, Inc.*, 150 A.D.3d 648, 648–49, 54 N.Y.S.3d 38, 39–40 (2d Dep't 2017). Moreover, "[w]hen a party seeks rescission and not damages on the basis of fraud, proof of scienter is not necessary; even an innocent misrepresentation is sufficient for rescission." *Steen v. Bump*, 233 A.D.2d 583, 584, 649 N.Y.S.2d 731, 733 (3d Dep't 1996).

Defendants have presented overwhelming evidence that the So-Ordered Stipulation is subject to recission under New York law. *First*, it is undisputed that the Schwimmer Affirmation was not signed by Isaac Schwimmer. This means that the sole factual evidence submitted in support of the preliminary injunction motion was falsified, and consequently, the record available to Plaintiffs when considering whether to consent to the stipulation was, at its core, a misrepresentation. Accordingly, this Court has no difficulty concluding that Defendants have satisfactorily demonstrated that there was a material misrepresentation of fact—*i.e.*, misrepresentations as to both the substance of the Schwimmer Affirmation, and to the existence of evidence in support of the motion. *Second*, to the extent that scienter is required, it is sufficiently demonstrated. While counsel for Plaintiffs avers that he did not know that the Schwimmer Affirmation was falsified, and the Court sees no reason to doubt this, it is nonetheless the case that Plaintiffs should have known that the affirmation was falsely signed and contained false information. Among other things, the purported affirmant, Isaac Schwimmer, is a party to this litigation and knew he did not sign it upon being presented with the document. *Third*, Plaintiffs submitted the affirmation to the Court in support of their motion for preliminary injunction, and accordingly, it is fair to say that they made the misrepresentation with an intent to induce reliance thereupon. *Fourth*, Defendants persuasively aver that they relied upon the Schwimmer Affirmation when determining to enter the So-Ordered Stipulation. Moreover, it was reasonable for Defendants to rely upon the affirmation. While it is expected that parties will present their strongest positions and that the Court will test those positions, it is nonetheless reasonable for a party to presume that their opponent is not submitting falsified evidence.

Accordingly, the Court finds that Defendants have presented significant evidence in support of rescinding the So-Ordered Stipulation pursuant to New York contract law.

13

**CONCLUSION**

      For the reasons stated above, Defendants' motion to vacate the So-Ordered Stipulation is GRANTED pursuant to this Court's inherent equitable powers to revisit interlocutory orders. The Clerk of the Court is kindly directed to vacate the So-Ordered Stipulation at ECF No. 40 and to terminate the motion at ECF No. 90.

Dated:   March 26, 2021                                     SO ORDERED:
            White Plains, New York

                                                                     NELSON S. ROMÁN
                                                                   United States District Judge