UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MENDEL STERN, YOEL FRIED and FRAIDA M. FRIED, and MELECH KRAUSS,

                       Plaintiffs,

   -against-

HIGHLAND LAKE HOMEOWNERS ASSOCIATION, ARTHUR EDWARDS, INC., ARCHWAY PROPERTY MANAGEMENT, INC., CARMINE MASTROGIACOMO, CHRISTOPHER PERRINO, ALEX RUBANOVICH, NANCY DIAZ, and RAY TORRES,

                       Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/31/2025

No. 18-cv-04622 (NSR) (VR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiffs Mendel Stern ("Stern"), Yoel Fried ("Yoel"), Fraida M. Fried ("Fraida"), Melech Krauss ("Krauss") (collectively, "Plaintiffs") bring this action against Highland Lake Homeowners Association ("HOA"), Arthur Edwards, Inc. ("Edwards"), Archway Property Management, Inc. ("Archway"), Carmine Mastrogiacomo ("Mastrogiacomo"), Christopher Perino i/s/h/a Christopher Perrino ("Perrino"), Alec Rubanovich i/s/h/a Alex Rubanovic ("Rubanovich"), Nancy Diaz ("Diaz"), and Ray Torres ("Torres") ("Individual Defendants," collectively, "Defendants") asserting violations under the Fair Housing Act, 42 U.S.C. §§ 3604 and 3617 and related state law claims pursuant to New York Executive Law § 296.

    Presently before the Court is Defendants' motion for summary judgment seeking dismissal of the Complaint[1] (ECF No. 2) in its entirety. For the reasons articulated below, Defendants'

---

[1] By an Order at ECF No. 102 dated April 27, 2021 the Court dismissed claims asserted by Plaintiffs Israel Ostreicher, Avrohom Ostreicher, Esther Schwimmer, Joel Sabel, and Abraham Kohn against the same Defendants here which dismissed alleged claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc(a)(A1) ("RLUIPA"). Accordingly, the Court considers the RLUIPA claim discontinued.

1

motion is GRANTED with prejudice.

## FACTUAL BACKGROUND

The facts below are taken from the Complaint ("Comp.," ECF No. 2), Defendants' Local Rule 56.1 Statement ("Defts. 56.1," ECF No. 158), Plaintiffs' Response to Defendants' Local Rule 56.1 Statement ("Pltfs. Resp. 56.1," ECF No. 167), and the parties' supporting materials[2] and are uncontested except where otherwise indicated. The following facts are construed in the light most favorable to Plaintiffs as the side opposing summary judgment. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).

Plaintiffs Stern, Yoel, Fraida, and Krauss commenced this action on May 24, 2018, alleging that Defendants discriminated against Plaintiffs, who are Hasidic Jews (also called Hassidim), based on their religion. Plaintiffs own homes in Highland Lake Estates ("HLE"), a residential neighborhood located in Woodbury, New York. The alleged discrimination claims relate to Individual Defendants' conduct and amendments to governing documents adopted by Defendant HOA that are purported to have been adopted with discriminatory intent.

**HOA**

HLE's HOA was incorporated on July 19, 1994 with the purpose of, *inter alia*, providing the maintenance, preservation, and architectural control of the residence lots and common areas of the residential community; promoting the health, safety, and welfare of the residents; and fixing, collecting and enforcing payment of charges and assessments. (Pltfs. Resp. 56.1 ¶ 5.) Since its

---

[2] Motion for Summary Judgment ("Mot.," ECF No. 150); Declarations of Richard S. Sklarin in Support of Motion ("Sklarin Decl..," ECF Nos. 151, 152, 153, 154); Affidavit of Thomas Tschinkle in Support of Motion ("Tschinkle Aff.," ECF No. 155); Affidavit of Carmine Mastrogiacomo in Support ("Mastrogiacomo Aff.," ECF No. 156); Memorandum of Law in Support of Motion ("Defts. Mem.," ECF No. 157); Defendants' Local Rule 56.1 Statement ("Defts. 56.1", ECF No. 158), Memorandum of Law in Opposition of Motion ("Opp. Mem," ECF No. 159); Declarations of Esther Engelson in Opposition of Motion ("Engelson Decl.," ECF Nos. 165, 166); Plaintiffs' Response to Defendants' Local Rule 56.1 Statement ("Pltfs. Resp. 56.1", ECF No. 167); Reply Affirmation of Maurizio Savoiardo in Support of Motion ("Maurizio Aff.," ECF No. 168); Reply Memorandum of Law in Support of Motion ("Reply," ECF No. 169).

incorporation, the HOA has taken action to advance their chartering objectives:

- In August 1995, the HOA adopted a Declaration of Covenants which, in pertinent part, states: [n]o building, fence, wall or other structure, or change or alteration to the exterior of the Homes or in the landscaping shall be commenced, erected or maintained . . . unless the plans and specifications showing the nature, kind, shape, height, materials, color and locations of the same have been submitted and approved in writing . . . by the Board of Directors and The Association, or by an architectural committee. (*Id.* ¶ 10.)

- On December 5, 2016, the Declaration of Covenants was amended to "better clarify that Homes can only be used for residential purposes and not as a school or house of worship" by expressly amending the Declaration to read that "Homes and Lots can only be used for residential purposes and not as a school or house of worship." (*Id.* ¶ 11.)

- The HOA By-Laws define Members as those Owners who are holders of a Membership interest in the Association and all present and future Members who are all subject to the By-Laws and rules and regulations that govern the conduct of Members. An Owner is defined within the By-Laws as the record owner of fee simple title to any Home. Amending the By-Laws requires approval by a vote of 2/3 of the Members. (*Id.* ¶¶ 12–14.)

- The July 18, 2016 Amendment to the HOA's By-Laws prohibited the leasing or renting of homes passed with at least 2/3 of the vote. (*Id.* ¶ 167.)

- In March 2017, the HOA adopted Rules and Regulations that required temporary structures to be approved by the Board of Directors and required that they comply with all local government zoning requirements. (*Id.* ¶¶ 18.)

- The March 2017 Rules and Regulations also prohibited renting, subleasing or subletting and stated that fines for violations can be imposed. It further prohibited business, trade, occupation or profession of any kind, commercial, religious, educational or otherwise, designated for profit, altruism or otherwise to be conducted, maintained or permitted by any homeowner resulting in servicing customers at the home in HLE on any property. It also required that the seller of any home or property in HLE give notification to the Board of Directors of any potential sale. (*Id.* ¶¶ 20–22.)

- The March 2017 Rules and Regulations deemed Sunday as "Home and Family Day of Tranquility," meaning that homes could not be viewed for sale or purchase and certain other business activities were reduced or prohibited. (*Id.* ¶¶ 24.) The parties dispute the intent behind Home and Family Day, Defendants contending that it was a day to minimize car traffic and allow children to play in the street and Plaintiffs asserting that it was a way to curtail Hasidic Jews from viewing or showing property in HLE, since Sunday is the only weekend day they are available. (*Id.* ¶¶

148–149, 171.)

- On September 7, 2017 the no showing of houses on Sunday rule was modified and changed in response to complaints and the advice of counsel following complaint by another former resident to the Department of Human Rights. (*Id.* ¶¶ 26, 171.) Viewing hours were expanded to Monday through Friday from 10:00 a.m. until 7:00 p.m.; and Saturday and Sunday home showings were permitted between 10:00 a.m. and 2:00 p.m. (*Id.* ¶ 26.)

In addition to alleged discriminatory modifications to the HOA's governing documents, Plaintiffs allege individualized discriminatory conduct against them by Individual Defendants.

**Summary of Plaintiffs' Allegations**

*Plaintiff Stern*

Plaintiff Stern purchased 1 Vanderbilt Drive and 11 Vanderbilt Drive within HLE in July 2016 and early 2017, respectively, and did not move into HLE until April 2018. (*Id.* ¶¶ 39, 42.) Stern rented his 1 Vanderbilt Drive home for one year and then moved into the home with his family in the spring of 2018. (*Id.* ¶ 43.) Despite being aware in 2016 that he was violating the no rental provision in the amended HOA By-Laws, Stern continued to rent his 1 Vanderbilt Drive property to a tenant and did not inform the HOA. (*Id.* ¶¶ 48, 50.) Stern also rented 11 Vanderbilt Drive in violation of the By-Laws. (*Id.* ¶¶54–55.)

Between 2017 and 2018, Stern accrued over $16,800 in fines for violations to the HOA's rules, including violating the no-rental ban, not complying with garbage disposal rules, and failing to remove poles erected without authorization from his property. (Id. ¶¶ 58–78.) Stern also alleges that the HOA insisted that a Sukkah (temporary religious structure) erected by Highland Lake resident and former plaintiff, Aharon Ostreicher, be dismantled. (*Id.* ¶ 1.) Stern received a written warning from the HOA not to utilize any property he owned for prayer and Stern was stopped "a couple of times" by HOA Board Members. (*Id.* ¶ 1.)  Stern's home was vandalized when nails were left in his driveway and pipes outside of his home were cut. (*Id.* ¶ 1.) Non-party Kyle Wood

4

threw snowballs at Stern, his niece and his car and Defendant Mastrogiacomo, who was a bystander, laughed when the snowballs were thrown. (*Id.* ¶ 1.)

*Plaintiff Krauss*

Plaintiff Krauss closed on his home located at 29 Vanderbilt Drive on October 27, 2016 and began renting out the property without authorization sometime thereafter. (*Id.* ¶ 116.) By letter dated February 24, 2017, HLE HOA's counsel advised the tenants at 29 Vanderbilt Drive, Christopher and Wendy Carneglia, that their tenancy was void and they were required to vacate the premises by March 31, 2017. (*Id.* ¶ 117.) Between March and June 2017, the HOA notified Krauss that it had imposed additional fines for his continued violation of the By-Laws by renting the premises at 29 Vanderbilt Drive. (*Id.* ¶¶ 118–121.) Plaintiff Krauss admits that the HOA was entitled to impose fines for his violation of the no-rental By-Laws but avers that the no-rental ban was discriminatory and aimed to keep Hasidic Jews from living within HLE. (*Id.* ¶¶ 122, 2.) Krauss was also fined for failing to submit plans to the HOA for $200,000 to $250,000 in planned renovations to 29 Vanderbilt Drive, though he believed that informing the town of Woodbury of his plans was sufficient notification. (*Id.* ¶ 127.) In April of 2017, around the time of the renovations, pipes outside of his home were cut, causing partial flooding of his home. (*Id.* ¶ 133.) Per the police incident report, the drains in all of the bathrooms were plugged, the pipes appeared to be cut with a pipe cutter, there was no indication that anyone broke into the home and none of the Defendants were identified as suspects in the police report. (*Id.*)

*Plaintiff Yoel Fried*

Plaintiff Yoel Fried purchased 16 Vanderbilt Drive in September 2016. (*Id.* ¶ 84.) Yoel alleges that upon moving into the development, Defendants Perino and Mastrogiacomo stopped in front of his house at midnight in a car and shone the headlights into the house for twenty minutes

before calling on a cellphone to inquire whether he had read the HOA by-laws. (*Id.* ¶ 3.) Yoel alleged he was stopped multiple times in the summer of 2017 by Defendants Mastrogiacomo and Rubanovich who inquired as to what he was doing in the development and advised him that he was on private property. (*Id.* ¶ 3.) In May 2017, Yoel requested permission from the HOA to rent his home citing his financial condition as the reason. (Id. ¶ 100.) His request was denied, and he was advised that renting, subleasing, or subletting was not permitted pursuant to the By-Laws and HOA Rules and Regulations. (Id. ¶¶ 100–101.) He asserts that the By-Laws' ban on rentals was adopted to prohibit owners from renting to Hasidic Jews. (*Id.* ¶ 3.) By 2019, Yoel had accrued $150,000 in personal debt in addition to his mortgage and Plaintiff Fraida (Yoel's wife) applied and received food stamps in the amount of $700 per month. (*Id.* ¶ 96.)

*Plaintiff Fraida Fried*

Plaintiff Fraida, a realtor, and wife of Yoel Fried, alleges that she has been interrupted and harassed by residents in the development and by members of the HOA. (*Id.* ¶ 3.) Fraida conceded that she was required to notify the property management company of all house showings and admitted she has violated this requirement. (*Id.* ¶ 113.) While she was showing homes within HLE to Hasidic clients, Fraida alleges Defendant Mastrogiacomo interrupted the showing and called the police to check on what she was doing in one instance and exited his vehicle and ordered that she leave the premises because house showings were not allowed on Sundays per HOA rules in another. (*Id.* ¶ 3.) Further, Fraida alleges that Defendant Torres followed her as she was showing a home located within HLE to a Hasidic client and, upon completing that showing, Defendant Mastrogiacomo confronted her client by inquiring what he was doing there and discouraging him from pursuing the home sale. (*Id.*) Fraida claims that the two or three clients who were involved chose not to follow through with the purchase and purportedly expressed being upset that they

6

were being targeted because of their religion. (*Id.*) Fraida believes the evidence of discrimination in this case is that the "[HOA] changed the By-Laws from the time that Hasidic people started buying at HLE." (*Id.* 105.)

Plaintiffs allege that the amendments to the HOA's governing documents coupled with alleged conduct by Defendants were perpetrated to discriminate against and to prevent Hasidic Jews from moving into the community. As such, Plaintiffs allege that Defendants violated the Fair Housing Act, 42 U.S.C. §§ 3617 and 3604 and related state law claims pursuant to New York Executive Law § 296. From these events arose the instant action.

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the

7

material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

When deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to a defendant when his intent is at issue, *Gallo v. Prudential Residential Servs.*, Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994) (citations omitted). Intent is difficult to prove, and rarely is discrimination evident in documents and papers, necessitating careful scrutiny of testimony by the factfinder "for circumstantial proof which, if believed, would show discrimination." *Id.*

**DISCUSSION**

Plaintiffs allege religious discrimination under two sections of the FHA. First, 42 U.S.C. § 3604(b)[3] which explicitly prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Second, Plaintiffs assert a 42 U.S.C. § 3617 claim, which prohibits coercion, intimidation, threats, or interference with "any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section [3604] of this title."

Defendants do not dispute that the Plaintiffs are members of a protected class as Hasidic Jews, but they argue that Plaintiffs fail to demonstrate that Defendants' conduct establishes a hostile environment under the FHA and that, even if they did, Defendants proffered legitimate non-discriminatory reasons for their actions. (*See generally*, Defts. Mem.; Pltfs. Opp'n.) Plaintiffs refute Defendants' assertions as Defendants alleged actions made it "impossible for Hasidic Jews to purchase homes or remain in their homes" within the HLE and contend that Defendants' actions were motivated by religious animus. (Pltfs. Opp'n at 5, 8.) For the reasons that follow, the Court grants Defendants' motion for summary judgment in its entirety.

---

[3] 3604(a),(c),(d), (e) &(f) are not implicated by the allegations in the Complaint or Plaintiffs' opposition to the instant motion.

9

I.      **Alleged FHA Discrimination Claims Against Defendants**

Plaintiffs assert discrimination claims against the HOA and Individual Defendants. In deciding a motion for summary judgment on an FHA claim based on intentional discrimination, the Court must apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Burris v. Hous. & Servs. Inc.*, 17-CV-9289 (JGK), 2023 WL 1966120, at *8 (S.D.N.Y. Feb. 13, 2023) (citing *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003)). Under *McDonnell Douglas*, Plaintiffs bear the initial burden of establishing "a prima facie case of discrimination." *Mitchell*, 350 F.3d at 47 (citing *McDonnell Douglas*, 411 U.S. at 802–02). To prevail on a claim of discrimination under the FHA, Plaintiff must demonstrate a relationship between the discriminatory conduct and housing. *People of State of N.Y. by Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y. 1988). Once the Plaintiff establishes a prima face case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for the challenged action. *McDonnell Douglas* at 802–03. If the Defendant articulates a non-discriminatory reason for the challenged action, the burden shifts back to the plaintiff to demonstrate that the discrimination was the real reason for the defendant's unlawful action. *Id.* at 804; *see e.g.*, *Schnabel v. Abramson*, 232 F.3d 83, 87 (2000); *Walsh v. New York City Housing Authority*, 828 F.3d 70, 74-75 (2d Cir. 2016). Stated differently, plaintiff must establish "that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

To establish prima facie showing of a hostile housing environment claim pursuant to 42 U.S.C. § 3604(b) a Plaintiff must establish that (1) he was subjected to harassment that was sufficiently pervasive and severe to create a hostile housing environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) the defendant is responsible for the allegedly harassing conduct towards the plaintiff. For the conduct to constitute harassment such that it creates a hostile environment under the FHA, it must be pervasive and severe and not merely isolated or sporadic. *Favourite v. 55 Halley Street, Inc.*, 381 F. Supp. 3d 266 (S.D.N.Y. 2019). Congruent to § 3604(b), district courts in this Circuit have held that a plaintiff bringing a post-acquisition hostile housing environment claim under § 3617[4] must prove (1) that he or she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment; (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the landlord or property manager. *See, e.g., A.L.M. by & through Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 17-CV-07385 (NSR), 2019 WL 3532178, at *8 (S.D.N.Y. Aug. 2, 2019), aff'd, No. 19-2771-CV, 2021 WL 5121137 (2d Cir. Nov. 4, 2021) (collecting cases).

Defendants do not dispute that the Plaintiffs are members of a protected class as Hasidic Jews, but they argue that Plaintiffs fail to demonstrate that (i) the alleged discrimination "satisfies the severe and pervasive" standards under 42 U.S.C. §§ 3604(b) and 3617 to establish a hostile environment and (ii) that even if they did, Defendants' proffered legitimate non-discriminatory reasons for their actions, contending that their actions are not pretext for discrimination. (*See generally*, Defts. Mem.; Pltfs. Opp'n.)

---

[4] The same standard and burden shifting analysis applies to the Plaintiffs' state law claims asserted pursuant to New York Executive Law § 296.

### A.  Severe and Pervasive Standard

Plaintiffs contend that the HOA's "onerous and intrusive governing documents" coupled with individualized alleged discrimination created an "intensely hostile environment" for Hasidic Jews in HLE. (Pltfs. Opp'n at 7.) The parties dispute whether the alleged policies and conduct were sufficiently pervasive and severe to create a hostile housing environment.

#### 1.  HOA Governing Documents

For the HOA-document-related violations, the Plaintiffs fail to sufficiently connect the HOA's governing documents to discrimination against Hasidic Jews. (Pltfs. Opp'n at 11–12; *see generally* Defts. Mem.)

**Rental Ban.** Plaintiffs argue that barring Plaintiffs from renting their properties, in accordance with the July 18, 2016 amendment to the By-Laws was enacted with the hope of deterring Hassidim from purchasing homes as it was the "Board's belief that Hassidim rent their homes." (Pltfs. Opp'n at 11.) Defendants provided evidence to demonstrate that (i) rental bans were being at least preliminarily contemplated as early as 2014, before Hassidim moved into HLE and the Individual Defendants were associated with the HOA; (ii) applied to all residents of HLE; and (iii) and the no rental By-Law was passed by a 2/3 vote of the HLE membership and implemented by a Board before any of the Defendants were Board Members. (Defts. 56.1 at ¶¶ 14, 154, 165, 167.) In proving a prima facie case of housing discrimination, a plaintiff has the ultimate burden of proving, by a preponderance of the evidence, the defendant's challenged actions were motivated by discrimination. *Mitchell v. Shane*, 350 F.3d 39, 49 (2d Cir. 2003). Plaintiffs did not provide more than conclusory statements to the suggest the contrary.

**Religious Structures.** Plaintiffs contend that barring the building of temporary structures and fining Defendants for the erection of Sukkot and Eruv (religious structures), in accordance with Rule 9.1 of the September 7, 2017, Rules and Regulations, prevented Defendants from being able to freely practice their religion. (Pltfs. Opp'n at 11.) The prohibitions against the structures have since been lifted and accommodations made. Plaintiffs did not provide any further evidence to indicate that Hassidim continued to be fined or otherwise discriminated against after the change in policy.

**Commercial Restrictions on Sundays.** Plaintiffs aver that barring commercial activity on Sunday in accordance with Rule 15.2 of the September 7, 2017, Rules and Regulations, which conflicted with the Saturday day of rest for Hassidic Jews and was implemented after the arrival of Hassidic Jews. (Pltfs. Opp'n at 11.) Plaintiffs have proffered non-discriminatory reasons the restrictions in the Covenants, By-Laws and Rules and Regulations were implemented including reducing commercial traffic. Plaintiffs fail to demonstrate a relationship between the discriminatory conduct and housing. *Abrams* 694 F. Supp. at 1104.

**Home Sale Viewing and Signage Restrictions.** Plaintiffs aver that barring homeowners from showing their house on Sunday in accordance with Rule 14.4 of the March 4, 2017, Rules and Regulations, which was later modified with the September 7, 2017 and for sale signs on the property, in accordance with Rule 14.10, were adopted with the "hope" that Hassidim will not be made aware of any homes for sale and be deterred from purchasing homes in the community. (Pltfs. Opp'n at 12.) However the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). As Plaintiffs concede, the policy prohibiting home viewing on Sundays was modified six months later following resident complaints and advice of counsel. Home viewings are permitted during the

same time frames on both Saturday and Sunday. As for the signage issue, Defendants provided evidence to support that the ban "For Sale" signs are for aesthetic reasons and is applied equally. Plaintiffs failed to rebut this point.

**Security Gates**. Plaintiffs content that erecting gates at the front entrance to HOA was motivated so that Hassidim have a challenging time entering and viewing homes for sale. Plaintiffs failed to provide evidence demonstrating how security gates create a burden for Hassidim on account of their religion.

**House of Worship.** Plaintiffs contend that barring homes from being used as houses of worship, in accordance with the December 5, 2016 Amendment to the Declaration of Covenants, when a house of worship is an essential component of their faith. Plaintiff Stern alleges that he was discriminated against after being advised his property could not be converted to a Synagogue. (Defts. 56.1 ¶ 152.) Indeed, the entirety of the Highland Lake Estates is zoned residentially. (Mastrogiacomo Aff. at 6.) Further, the Amended Declaration of Covenants prohibits the establishment of a house of worship precisely because the community is zoned residentially. (Defts. 56.1 ¶ 11.) Plaintiffs did not provide more than conclusory statements as to how this constitutes discrimination.

    2.    **Alleged Individualized Discrimination**

In addition to their contentions that the HOA amendments created a hostile environment, Plaintiffs purport that individualized discrimination against Plaintiffs as residents within HLE on account of their identity as Hassidim. "Whether hostile environment harassment exists depends upon the totality of the circumstances." 24 C.F.R. § 100.600(a)(2)(i). As such, the Court views the HOA amendments in conjunction with the alleged actions of Individual Defendants. The "[f]actors to be considered ... include ... the nature of the conduct, the context in which the incident(s)

occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." *Id.* § 100.600(a)(2)(i)(A). "Whether unwelcome conduct is sufficiently severe or pervasive ... is evaluated from the perspective of a reasonable person in the aggrieved person's position." *Id.* § 100.600(a)(2)(i)(C).

For individualized discrimination, Plaintiffs cite to being stopped and questioned for identification, being stared at, being invited to a pig roast party, two instances include cut pipes at Plaintiffs Stern and Krauss' home by unidentified persons, snowballs thrown at Plaintiff Stern, his car and niece by a non-party while Defendant Mastrogiacomo allegedly laughed, the removal of a "For Sale" sign from a lawn by an unidentified person, and one incident alleging headlights being shone into the home of the Fried Plaintiffs after they recently moved in. (*See* Compl.)

Further, Plaintiffs unsuccessfully attempt to draw a causal link between the HOA's no-rental policy to religious discrimination. Neither Plaintiffs Krauss nor Stern dispute that they violated the HLE no-rental rules subjecting them to fines and assessments nor does the record support unequal enforcement of the no-rental ban. Defendants correctly highlight that the no rental By-Law was passed by a 2/3 vote of the HLE membership and implemented by a Board before any of the Defendants were Board Members. (Reply at 9.)

The Second Circuit has cautioned that hostile environment cases may not be well-suited to disposition on summary judgment unless on the facts alleged no reasonable jurors could differ on the conclusion to be drawn. *See Richardson v. New York State Department of Correctional Services*, 180 F.3d 426, 438 (2d Cir.1999). For the conduct to constitute harassment such that it creates a hostile environment under the FHA, it must be pervasive and severe and not merely isolated of sporadic. *See Abrams*, 694 F. Supp. at 1104; *Robles v. Goddard Riverside Community Center*, 1997 WL 475165, at *4 (S.D.N.Y. June 17, 2009). Based on a review of the record, that

15

is not the case here. Given the totality of the circumstances and viewing the facts in the light most favorable to nonmovants, and from the perspective of a reasonable person in the aggrieved person's position, Plaintiffs have not met their burden to support prima facie showing of discrimination on account of their Hasidic Jewish identity. Plaintiffs fail to demonstrate that the alleged discrimination was pervasive and severe and not merely isolated or sporadic. *See Abrams* at 1104. Moreover, even if Plaintiffs made such a showing, Defendants meet their "minimal burden" of production in supporting the non-discriminatory reasons for their policies. *Birch Fam. Servs., Inc. v. Wlody*, No. 19-CV-03301 (DLI) (PK), 2021 WL 2312852, at *10 (E.D.N.Y. June 7, 2021), *aff'd*, No. 21-1553, 2022 WL 1468160 (2d Cir. May 10, 2022); *see also*, *Wentworth v. Hedson*, 493 F. Supp. 2d 559, 569 (E.D.N.Y. 2007) ("defendant 'is required to articulate-but not prove-a legitimate, nondiscriminatory reason' ") (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988)).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment in its entirety with prejudice. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 150, to terminate the action, and to enter judgment in favor of the Defendants.

SO ORDERED.

Dated: March 31, 2025
    White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge